## ARKANSAS STATE BOARD OF PHARMACY *v.* TOY C. HALL ET AL

5-4366                                421 S. W. 2d 888

Opinion delivered December 18, 1967

742

*Warren & Bullion,* for appellant.

*Russell Elrod,* for appellees.

*Dickey & Dickey* and *Spitzberg, Bonner, Mitchell & Hays,* amicus curiae.

GEORGE ROSE SMITH, Justice. This case began as an application by the appellees, two qualified registered pharmacists, for a permit to establish and conduct a new pharmacy at 304 South Maxwell Street in the City of Siloam Springs. The State Board of Pharmacy denied the application on the ground that it did not meet the requirements of the Board's Regulation 36, adopted in 1966. On appeal the circuit court reversed the Board's decision, holding that Paragraph 2 of the regulation—the provision pertinent to this litigation—was invalid as being beyond the authority granted to the Board by the legislature. The correctness of that ruling is the controlling question here.

We quote Paragraph 2 of the regulation:

2. In determining whether to issue a registered pharmacy permit for a new pharmacy or for a new location of an existing pharmacy, the Board will determine whether public need and convenience will be served by the granting of the permit at the particular location sought. The Board will not grant a permit where the granting of the permit will not serve the public need or convenience.

We need not narrate at length the facts developed at the hearing before the Board, at which the appellees were not represented by counsel. Their application for a permit was opposed by rival pharmacists in Siloam Springs, whose testimony tended to show that the operation of a pharmacy at the particular location selected by the appellees would eventually create a monopoly.

The threat of a monopoly stems from these facts: Five of the six physicians practicing in Siloam Springs are building a medical center which they will occupy together. They plan to construct, next to the medical center, a fully-equipped pharmacy. The appellees bid for the privilege of running the pharmacy. They will pay a monthly rental of $550 for the small pharmacy building (as compared to the rental of $75 a month formerly paid by the appellee Toy for a drugstore building in the same city).

One of the doctors testified that his group will have no interest in the pharmacy, will make no effort to send patients to the pharmacy, and will have no agreement with the pharmacists for rebates or a share in the profits. Despite the doctors' protestations counsel for the Board argue, and the Board doubtless believed, that the doctors' self-interest, stemming from their ownership of the building and their power to fix the rent, would ultimately result in their channeling so much business to the clinic-connected pharmacy as to give it a decided competitive advantage over the other three pharmacies in the city.

Turning to the pivotal question of law—the validity of Paragraph 2 of Regulation 36—we emphasize at the outset that our sole inquiry is whether the legislature has conferred upon the Board of Pharmacy the power to determine, as a condition to the issuance of a permit, whether the public need and convenience will be served by the operation of a pharmacy at the particular location selected by the applicant. We are not concerned either with the wisdom of the statutes governing the Board or with any questions of medical ethics that might be raised with respect to the proposed medical center and pharmacy.

Our study of the pertinent statutes firmly convinces us that the legislature has not undertaken to delegate to the Board of Pharmacy the power to exercise the

authority embodied in the regulation in question. The various acts pertaining to the Board are compiled as Title 72, Chapter 10, of the Arkansas Statutes Annotated (Repl. 1957).

The Board was created by Act 50 of 1891. That statute authorized the Board to register qualified pharmacists, with or without examination as directed by the act. It was made unlawful for any person not a registered pharmacist to conduct a drugstore, pharmacy, or apothecary shop for the compounding or dispensing of medicines.

Act 72 of 1929 embodied a more comprehensive enumeration of the Board's powers and duties. For the first time the Board was directed to register not only pharmacists but also pharmacies. Section 8 of the act provided that no person should conduct a drug-dispensing pharmacy unless it had been registered with the Board and a permit therefor obtained. Ark. Stat. Ann. § 72-1017. There was, however, no suggestion whatever that the Board was given any discretion in the matter of issuing pharmacy permits to qualified pharmacists. To the contrary, Section 5 of Act 72 (§ 72-1013) declared, "A registered pharmacist shall have a right to conduct a pharmacy." Moreover, Section 9 of the act (§ 72-1018), governing the issuance of pharmacy permits, stated that the Board "shall" issue such permits to persons the Board deems to be qualified to conduct a pharmacy. There is no hint of discretionary authority, other than in the matter of the applicant's qualifications.

Finally, we come to Act 57 of 1955, upon which the Board relies for its delegated authority to approve or disapprove pharmacy applications on the basis of public need and convenience. In point of fact, Act 57 contains not even a line bearing directly upon the issuance of pharmacy permits. The act had as its principal purpose the creation and regulation of a new class of pharmacists, to be known as Practical Druggists. Almost

every section of the act bears upon the licensing and authority of such Practical Druggists. In fact, Section 9 (§ 72-1011.5) recites: "This act is an emergency measure and any person desiring to obtain the benefits hereof and become a licensed "Practical Druggist" must file his or her application with the . . . Board of Pharmacy within ninety days after the effective date of this act . . . or be forever barred."

The Board, in insisting that it has the authority to condition the issuance of pharmacy permits upon a showing of public convenience and necessity similar to that required in the licensing of public utilities, relies upon Section 19 (§ 72-1004.1) of the foregoing Practical Druggist act, which reads as follows:

The Arkansas State Board of Pharmacy shall have authority to make reasonable rules and regulations, not inconsistent with law, to carry out *the purposes and intentions of this act and the pharmacy laws of this state which said Board deems necessary to preserve and protect the public health.* (Our italics.)

There are two clear-cut answers to the Board's insistence that the language which we have italicized was intended to confer upon the Board a broad, nebulous, and unfettered authority to promulgate any regulations which it deems necessary to preserve and protect the public health.

First, the asserted legislative delegation of rule making authority must be read in context. It is not reasonable to believe that the lawmakers meant to bury deep in a statute governing Practical Druggists a single clause that would invest the Board with far greater powers than those granted by all the other pertinent statutes put together. Secondly, even if the legislature had decided upon a delegation of such unlimited and unbridled power, the language now in question would violate the familiar constitutional principle that in delegat-

ing legislative authority the General Assembly must spell out appropriate standards for the guidance of the administrative body by which the power is to be exercised. *Walden* v. *Hart,* 243 Ark. 650, 420 S. W. 2d 868 (1967).

It is not our province to say whether the legislature *should* invest the Board with the discretion that it sought to draw to itself by the adoption of the regulatory rule now in controversy. Our unavoidable conclusion that the legislature has *not* done so is decisive of the present case.

Affirmed.