Susan Jayne BOHANNON *v.*
ARKANSAS STATE BOARD OF NURSING

94-1092                                              895 S.W.2d 923

Supreme Court of Arkansas
Opinion delivered April 3, 1995

*Law Office of Connie Mitchell*, by: *Connie Mitchell*, for appellant.

*Winston Bryant*, Att'y Gen., by: *John D. Harris*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant is a registered nurse who was charged by the Arkansas State Board of Nursing with violating Ark. Code Ann. § 17-86-309(a)(4) and (6) (Repl. 1992) as being "habitually intemperate or . . . addicted to the use of habit forming drugs" and "guilty of unprofessional conduct." The Board heard extensive testimony and concluded that appellant diverted controlled substances to herself and then falsified medical records to reflect that the drugs had been given to patients at both Bates Memorial Hospital in Bentonville and Eureka Springs Memorial Hospital. The Board suspended her license for three years and set out conditions for reinstatement.

Appellant appealed the Board's decision to circuit court. The circuit court affirmed the Board's ruling, and appellant appeals. We affirm the Board's ruling.

I.

Appellant's abstract is flagrantly deficient. *See* Ark. Sup. Ct. R. 4-2(b)(2). It does not contain a summarization of the pleadings or the Board's findings of fact and conclusions of law. Her abstract of the pleadings is as follows: "On May 27, 1993, the Arkansas State Board of Nursing sent its Order and Notice of Hearing to Susan Jayne Bohannon seeking to suspend and/or revoke her nursing license for alleged violations of Ark. Stat. [sic] Ann. § 17-86-309(a)(4) and (a)(6)."

Her abstract of the Board's order is as follows:

> After a hearing which occurred on August 11, 1993, on August 17, 1993 the Arkansas State Board of Nursing entered its Order suspending Susan Jayne Bohannon's nurs-

ing license in Arkansas. The Arkansas State Board of Nursing ordered that Susan Jayne Bohannon's nursing license in Arkansas be suspended for three years with conditions placed on reinstatement.

The findings of fact made by the Board are not abstracted.

■ We have held that a summary of the pleadings and the judgment appealed from are the bare essentials of an abstract. *Logan County* v. *Tritt*, 302 Ark. 81, 787 S.W.2d 239 (1990); *Jolly* v. *Hartje*, 294 Ark. 16, 740 S.W.2d 143 (1987). Appellant has failed to provide this. Yet, one of her points of appeal contains the following argument: "The Board's decision merely makes conclusory statements in violation of statutory authority."

The rules provide that the abstract shall consist of "an *impartial* condensation, without comment or emphasis" and that testimony be abstracted in first person. Ark. Sup. Ct. R. 4-2(a)(6) (emphasis added). Neither requirement has been met. The testimony provided is in third person, and it includes only those parts of the testimony that support appellant's arguments. For example, the abstracted testimony of Salena Wright, Nurse Manager of the Emergency Department at Bates Memorial Hospital, merely states that appellant notified the Director of Nursing that drug vials had been tampered with and that Ms. Wright had no personal knowledge of who diverted drugs at the hospital. Yet, Ms. Wright's testimony contains references to appellant's job performance and her refusal to submit to drug testing, and both of these facts bear directly on the propriety of the Board's decision.

The abstract of testimony incorporates arguments within the supposed testimony. For example, the testimony of Jim Bona is abstracted as follows:

> Mr. Bona read a report attached as Exhibit 2. The report contained hearsay which was objected to. Attachment 3 Report of Chemist was admitted without allowing cross-examination, Chapter 11, Section 10 (j) of the Rules of the Board and contained hearsay within hearsay. The report contained statements from persons present to testify, and Attachment 11 contained information that was irrelevant. Reports on patients were included that were identified by initials only thereby denying Susan Jayne Bohannon the right to cross-examination.

Another example is the following interjection of argument within supposed abstract of Beverly Terrell's testimony:

> Ms. Terrell's boss was seated in the Board Room and had been called by the attorney for the Board and the witness had ridden in the same vehicle to Little Rock with her boss and another witness for the attorney for the Board.

In *Haynes* v. *State*, 314 Ark. 354, 862 S.W.2d 275 (1993), we said such similarly selective abstracting constituted "egregious acts of omission and commission [which] go beyond mere oversight and constitute a gross violation of Rule 4-2(a)(6)." *Id.* at 357, 862 S.W.2d at 277. However, we addressed the merits because the State supplemented the abstract. *Id.* Similarly, in this case appellee Board has supplied a supplemental abstract of the testimony, but has not included a summary of pleadings or of the Board's order. Since appellant's abstract is flagrantly deficient, we summarily affirm all points of appeal except the point involving sufficiency of the evidence, and we determine that point only because the Board chose to supply a supplemental abstract which sets out the testimony involving that point.

## II.

We now turn to the only point we reach — whether the Board's decision was supported by substantial evidence. Judicial review of decisions of the Arkansas State Board of Nursing is governed by the Arkansas Administrative Procedure Act pursuant to Ark. Code Ann. § 25-15-212 (Repl. 1992). If there is any substantial evidence to support the agency's decision, the reviewing court will not reverse. *Arkansas Contractors Licensing Bd.* v. *Butler Constr. Co.*, 295 Ark. 223, 748 S.W.2d 129 (1988). Substantial evidence is valid, legal, and persuasive evidence that a reasonable mind might accept to support a conclusion and force the mind to pass beyond speculation and conjecture. *Woodyard* v. *Arkansas Diversified Ins. Co.*, 268 Ark. 94, 594 S.W.2d 13 (1980). To prove an absence of substantial evidence, appellant must show that fair-minded persons could not reach the same conclusion. *Arkansas Health Planning & Dev. Agency* v. *Hot Spring County Memorial Hosp.*, 291 Ark. 186, 723 S.W.2d 363 (1987). The question is not whether the testimony would have supported a contrary finding, but whether it would support the finding that was made. *Arkansas Highway and Transp. Dept.* v.

*McWilliams*, 41 Ark. App. 1, 846 S.W.2d 670 (1993). It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Robinson* v. *Ed Williams Constr. Co.*, 38 Ark. App. 90, 828 S.W.2d 860 (1992).

Appellant was charged with violating Ark. Code Ann. § 17-86-309(a)(4) and (6) as being "habitually intemperate or . . . addicted to the use of habit forming drugs" and "guilty of unprofessional conduct" based upon the following:

1. During but not limited to July 1992, while employed by Bates Memorial Hospital, Bentonville, Arkansas, [she] did make false or failed to correct documentation as to the administration of narcotics.

2. During the aforementioned time, [she] did divert controlled substances such as Demerol from her employer.

3. Prior to employment at Bates Hospital, respondent was employed at Eureka Springs Hospital, where she did make false or failed to make correct documentation as to the administration of narcotics.

In support of the allegations, the Board heard the following evidence. Jim Bona, an investigator for the Arkansas Department of Health, testified that on July 1, 1992, Rick DeFreece, Director of Pharmacy at Bates Memorial Hospital, submitted seven vials of meperidine hydrochloride (Demerol) for quantitative analysis. All seven vials were obtained from the emergency room controlled drug supply. The Arkansas Department of Health Toxicology Laboratory report found that all seven vials were adulterated. Subsequently, audit procedures were put in place, and inventories were checked by the hospital pharmacy at least once, and more often twice daily.

On July 7, 1992, the pharmacy director found three vials of Demerol from a medicine cart on the medical/surgical unit that appeared to have been tampered with in the same manner as those from the emergency room. These vials were submitted to the Toxicology Laboratory for testing, and it was determined that one of the vials was adulterated.

Hospital records and testimony from Salena Wright, Nurse Manager of the Emergency Department, indicated that appellant

worked in the emergency department until June 30, 1992, at which time she was transferred to the medical/surgical unit. Ms. Wright stated that appellant was transferred because she was not performing well in the emergency room and was having problems getting along with physicians and other nurses. Hospital records indicated that appellant was the only employee to sign out Demerol in the emergency department and the medical/surgical unit on the dates in question.

Ms. Wright stated that appellant had been assigned to care for patient "D.D." just before she resigned from Bates on July 7, 1992. D.D. came to the emergency room with acute abdominal pain and was given an injection of Demerol. D.D. was admitted to the medical/surgical unit at 5:00 a.m. on July 6, 1992, free of pain. Ms. Wright cared for the patient and charted that she was pain free throughout the day. Appellant took over the care of D.D. at 7:00 p.m. that evening. On July 7, Ms. Wright discovered that appellant had charted an injection of Demerol at 7:50 p.m. on July 6 and at 5:00 a.m. on July 7. Ms. Wright asked D.D. if she had received anything for pain, and the patient told her that she had complained of a headache and received two pills, but that was all.

After this incident, Ms. Wright did a retrospective review of other patients for whom appellant had cared. She found that appellant had cared for another patient on July 1, 1992, who had been unresponsive. Although there was no change in the patient's condition, the medication administration charts, signed by appellant, reflected that she gave Demerol at 8:10 p.m. on July 1, and again at 2:00, 3:00, and 6:00 a.m. on July 2. There was no indication of irritability or restlessness to warrant pain medication. It was the only Demerol the patient was given throughout her stay at the hospital.

Ms. Wright and Marian Fowler, Director of Human Resources, both testified that appellant had been very candid about being a recovering substance abuser when she applied at the hospital. Ms. Fowler stated that appellant agreed to submit to random drug tests throughout her tenure at the hospital as a part of the process for nurses in recovery. On July 7, 1992, Ms. Fowler and Ms. Wright asked appellant to submit to a drug test. At first appellant agreed, but became increasingly agitated and irritated

and stated that she thought she was being "set up." However, after three trips to the bathroom in a supposedly unsuccessful attempt to collect a urine specimen, appellant refused to take the test and stated that she was resigning from her employment.

Prior to her employment at Bates Memorial, appellant worked at Eureka Springs Memorial Hospital for twenty-one days. Testimony from administrators there provided ample evidence of faulty documentation and circumstantial evidence of drug use.

Sherry Gerster, Director of Nursing at Eureka Springs Memorial, testified that on her first day of employment, April 1, 1992, appellant was assigned a patient who was taking Demerol every three hours. Appellant signed out seventy-five milligrams of Demerol from the pharmacy, but did not document the need or action for the medication in her nurse's notes. On April 7, 1992, appellant was assigned to care for a patient for whom Demerol had been prescribed, but who did not receive any except when appellant was on duty. On April 8, appellant took care of this same patient and documented giving Demerol at 12:15 p.m., but did not document in her nurse's notes the reason it was given. In addition, while the medication and treatment documentation states that the drug was given at 12:15 p.m., the drug was not signed out on the controlled administration record until 12:40 p.m. At 3:15 p.m. on that same day, it was documented in the medication and treatment record that the patient was complaining of back pain and was given fifty milligrams of Demerol. However, nothing is documented in the nursing notes, and the Demerol was not signed out on the controlled drug administration record until 6:15 p.m.

Ms. Gerster stated that appellant was caring for another patient on the same shift that day who had been prescribed seventy-five milligrams of Demerol and twenty-five milligrams of Phenergan. At 3:15 p.m., appellant was given orders by a physician to give the medication, and such is documented in the medication and treatment record and in the nurse's notes. However, the controlled drug administration record reveals that appellant signed out one-hundred milligrams of Demerol to this patient and administered all of it.

Further, Ms. Gerster testified that appellant documented having given a postoperative patient seventy-five milligrams of

Demerol twenty minutes before she was to be discharged from the hospital. Ms. Gerster stated that this was in violation of hospital policy.

Ms. Gerster also testified that appellant took care of an outpatient surgery patient whom another nurse observed and recorded at 11:20 a.m. as having no nausea and eating ice chips. At 1:00 p.m, appellant documented that he complained of pain and nausea, vomited twice, and was given seventy-five milligrams of Demerol. However, at 1:10 p.m, it was documented that he was discharged in good spirits and in no acute distress. The hospital's discharge criteria mandate that a patient will not be discharged if he is nauseated or vomiting.

Finally, Ms. Gerster stated that on April 9, appellant cared for a patient for whom Demerol had been prescribed to be given as needed for pain. Although the patient was not in distress at 7:30 a.m., fifty milligrams of Demerol was signed out on the controlled drug record for her at 8:12 a.m. and again at 4:00 p.m. There was only one entry in the medication and treatment record for a dose of fifty milligrams of Demerol with no time recorded, but there were entries for doses of fifty milligrams of Demerol and twenty-five milligrams of Phenergan; one at 8:00 a.m. and one at 4:00 p.m.

Tina Long, who was Assistant Director of Nursing at Eureka Springs Hospital while appellant was employed there, testified that she observed appellant leaving the hospital with the keys to the narcotics cabinet. The keys are not supposed to leave the hospital. Ms. Long confronted appellant and reminded her that the keys were not to leave the hospital. Appellant replied that she had been hoping Ms. Long would not find out that she had taken the keys.

Ms. Long also stated that on April 21, 1992, appellant worked a twelve-hour shift, from 7:00 a.m. to 7:00 p.m. At 3:00 p.m., appellant was given the narcotics keys. Ms. Long received an electronic page at 7:00 p.m. from another employee who had checked the narcotics cabinet and suspected tampering. The employee stated that she had not handled the drugs. Ms. Long and the employee discovered that a seventy-five milligram vial of Demerol appeared to have been adulterated. They found a hub cover from a hypodermic needle in the employee bathroom right

after appellant had been there. Ms. Long called appellant's home at 8:10 p.m. to ask her to come in for a drug screen, but reached an answering machine and did not leave a message. Appellant was scheduled to work another twelve-hour shift on April 22, but called in sick.

 In summary, there is substantial evidence to support the Board's finding that appellant diverted drugs from her employers at Bates Memorial Hospital and at Eureka Springs Memorial Hospital and made false documentation about those drugs at both facilities. This also constituted substantial evidence to support the finding that appellant acted in an unprofessional manner. Accordingly, we affirm the ruling of the Board.

HOLT, C.J., not participating.