Boyce McQUAY *v.* ARKANSAS STATE
BOARD OF ARCHITECTS

98–995                                    989 S.W.2d 499

Supreme Court of Arkansas
Opinion delivered April 22, 1999

*Conner & Winters, P.L.L.C.*, by: *John R. Elrod* and *Vicki Bronson*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Warren T. Readnour*, Ass't Att'y Gen., for appellee.

R AY THORNTON, Justice. Appellant, Boyce McQuay, appeals from the assessment of a penalty of $48,000 for practicing architecture without a license. The Arkansas State Board of Architects (the Board) imposed the penalty following a hearing before the Board on April 18, 1995, and the Benton County Circuit Court affirmed the Board's order. Appellant raises four points on appeal, and we find that one of the points has merit. Accordingly, we reverse and remand with instructions to

return the case to the Board for further actions consistent with this opinion.

Appellant was not registered or licensed as an architect; however, in September 1992, appellant prepared construction documents for Woodland Manor Nursing Home. In January 1993, appellant prepared construction documents for Cobb/Vantress Laboratory Facility, and in August 1993 and in 1994, appellant designed and prepared construction documents in two phases for Atkinson Internal Medical Clinic. The statutes that frame the issues before us are codified at Ark. Code Ann. §§ 17-14-102, 17-14-203, and 17-14-301 (Supp. 1993).[1]

## Standard of Review

The standard of review in this area of the law is well-developed. Review of administrative decisions is limited in scope. Such decisions will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *In re Sugarloaf Mining Co.*, 310 Ark. 772, 840 S.W.2d 172 (1992). The appellate court's review is directed, not toward the circuit court, but toward the decision of the agency. That is so because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *Id.*

The standard is consistent with the provisions of the Administrative Procedure Act, which requires that the scope of appellate review under the act be limited. The Administrative Procedure Act states:

> (g) The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony may be taken before the court. The

---

[1] *Reporter's note:* Prior to the publication of the *Arkansas Code Annotated* 1995 replacement volume, the chapter comprising the Arkansas Architectural Act was codified at Ark. Code Ann. § 17-14-101 *et seq.* The language in question in the opinion appeared in Ark. Code Ann. § 17-14-203, found in the 1993 pocket-part supplement.

court shall, upon request, hear oral argument and receive written briefs.

(h) The court may affirm the decision of the agency or remand the case for further proceedings. It may reverse or modify the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the agency's statutory authority;

(3) Made upon unlawful procedure;

(4) Affected by other error or law;

(5) Not supported by substantial evidence of record; or

(6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark. Code Ann. § 25-15-212 (Repl. 1996). Appellant alleges that: (1) the enabling statute of Ark. Code Ann. § 17-14-203 is itself unconstitutional; (2) the Board's order was not based on substantial evidence; (3) the Board's order was arbitrary, capricious, and an abuse of discretion; and (4) the circuit court violated Ark. Code Ann. § 25-15-212(g) because it did not allow oral arguments to be held in this matter. We will consider these arguments in the sequence in which they are raised.

### Constitutionality of Ark. Code Ann. § 17-14-203

In appellant's first point on appeal he argues that Ark. Code Ann. § 17-14-203(d) is unconstitutional. Specifically, appellant claims this statute is unconstitutional because it gives the Board unbridled discretion in imposing penalties. The pertinent language of the statute states:

The board may, after providing notice and a hearing, levy civil penalties, in an amount not to exceed one thousand dollars ($1,000) for each violation, against those individuals or entities found to be in violation of this chapter or rules and regulations promulgated thereunder, with each day of violation to constitute a distinct and separate offense.

Ark. Code Ann. § 17-14-203(d).

We have held that discretionary power may be delegated by the legislature to the licensing authority, but it is essential that reasonable guidelines be provided. *Patton v. Ragland, Com'r & Charles v. Gordon, Com'r*, 282 Ark. 231, 668 S.W.2d 3 (1984). This guidance must include appropriate standards by which the administrative body is to exercise this power. *Arkansas State Bd. of Pharmacy v. Hall*, 243 Ark. 741, 421 S.W.2d 888 (1967). We have further noted that a statute or ordinance which in effect reposes an absolute, unregulated, and undefined discretion in an administrative agency bestows arbitrary powers and is an unlawful delegation of legislative powers. *Alcoholic Beverage Control v. R.C. Edwards Dist. Co.*, 284 Ark. 336, 681 S.W.2d 356 (1984) *(citing* 1 AM.JUR.2d *Administrative Law* § 108 (1962)). However, it is essential that challenges to the constitutionality of the statute must be raised before the agency itself.

We recently pointed out that we will not set aside an administrative determination upon a ground not presented to the agency because to do so would deprive the agency of the opportunity to consider the matter, make its ruling, and state the reasons for its action. *Arkansas Bd. of Exam'rs v. Carlson*, 334 Ark. 614, 976 S.W.2d 941 (1998). The same applies to constitutional arguments not raised at the agency level. *See Arkansas Health Servs. Agency v. Desiderata, Inc.*, 331 Ark. 144, 958 S.W.2d 7 (1998) (approving the rule adopted by the court of appeals in *Hamilton v. Jeffrey Stone Co.*, 6 Ark. App. 333, 641 S.W.2d 723 (1982) that even though the Workers' Compensation Commission may not have authority to declare statutes unconstitutional, such constitutional issues should first be raised at the Administrative Law Judge or Commission level, because such issues often require an exhaustive analysis that is best accomplished by an adversary proceeding, which can only be done at the hearing level). Because the issue was not properly developed before the Board, we do not review the question of whether the statute is unconstitutionally broad in giving the Board unbridled discretion.

*Substantial Evidence*

▇ In point two, appellant contends that the Board's decision was not supported by substantial evidence. We review the evidence to determine if there is substantial evidence to support the agency's decision. *Mid-South Rd. Builders, Inc. v. Arkansas Contractors Lic. Bd.*, 328 Ark. 630, 946 S.W.649 (1997). Substantial evidence has been defined as valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion, and force the mind to pass beyond conjecture. *Bohannon v. Arkansas Bd. of Nursing*, 320 Ark. 169, 895 S.W.2d 923 (1995). The appellant has the burden of proving an absence of substantial evidence. *Mid-South, supra.* It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Bohannon, supra.*

Substantial evidence was presented that appellant acted as an architect without a license. With regard to appellant's defense that he was working under the direction of an architect, J.H.E. Johnson, a licensed architect hired by the Board to investigate appellant's actions testified that Steve Saunders, a partner in Polk, Stanley, Saunders, and Associates (PSSA), an architectural firm with whom appellant claimed to have formed a joint venture, sent appellant a letter regarding Woodland Manor Nursing Home which stated PSSA could not "put their name on any architectural project which we have not designed." Johnson further testified that on the building permit for the Woodland Manor Nursing Home project appellant's name was listed as architect or designer of the project. Additionally, Johnson offered copies of numerous canceled checks from Woodland Manor Nursing Home paid to appellant. Of the estimated $450,000 for the total cost of the Woodland Manor Nursing Home project, PSSA received $4,800 and appellant received $24,000 for his services.

Johnson testified further as to appellant's activities in regard to the Cobb/Vantress project. Johnson testified that in a letter from appellant to Steve Saunders, appellant stated that "the red lines you indicated on the preliminaries are reflected in these drawings" and expressed a view that "I'm still not sure you're comfortable with how we are handling their job." He further

stated that according to a letter received by Joe Stanley, PSSA received only 20% of the fees collected from the project.

Saunders testified at the hearing about PSSA involvement with the two projects. Saunders explained that he had "red-lined" preliminary drawings given to him by appellant for both projects. He further stated that he "played no role" in the drafting of the plans for the two projects, nor did he think anyone in his firm drafted the plans. Finally, Saunders stated that he was not aware that Cobb/Vantress had been built or that PSSA was listed as the architect of record on that project.

Joe Stanley, a partner in PSSA, testified regarding PSSA and appellant's involvement in the projects. He testified that it was his understanding that PSSA was to act strictly as a consultant to appellant and was not to be listed as the architect on the projects.

Testimony was also presented that would support a finding that the work performed by appellant on Atkinson Internal Medical Clinic was in violation of the statute. Johnson testified that the plans for the original project, which was later scaled down, were drawn by appellant. He further stated that these plans would be for a facility that would be in excess of the $75,000 cost-threshold required by the statute. Finally, a letter from appellant to the Contractor's Licensing Board, which had investigated appellant's activities on the Atkinson project, was introduced. In this letter, appellant states that his office, "designs, produces construction documents, and does construction administration for all types of buildings."

▪ After reviewing all the testimony, we hold that the Board's decision that appellant was engaged in the practice of architecture without a license was supported by substantial evidence. Specifically, we hold that valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion and force the mind to pass beyond conjecture is present in this case.

*Arbitrary and Capricious*

■ For appellant's third point on appeal, he argues that the penalty set by the Board was arbitrary and capricious. Administrative action may be regarded as arbitrary and capricious where it is not supportable on any rational basis. *Partlow v. Ark. State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980). To have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was "willful and unreasoning action," without consideration and with a disregard of the facts or circumstances of the case. *Id.* We have also noted that an action is not arbitrary simply because the reviewing court would act differently. *Harding Glass Co. v. Arkansas Public Service Comm.*, 229 Ark. 153, 313 S.W.2d 812 (1958).

The Board fined appellant $48,000 for violation of the Arkansas Architectural Act. Specifically, on May 30, 1995, the Board stated:

> It is therefore ordered that respondent is in violation of item 2 of the Findings of Fact since September 3, 1992, for a total of 32 months [Woodland Manor Nursing Home]; in violation of item 3 of the Findings of Fact since January 7, 1993, for a total of 28 months [Cobb/Vantress Laboratory Facility]; in violation of item 4 of the Findings of Fact since August 24, 1993, for a total of 20 months, [Atkinson Internal Medical Clinic] for a combined total of 2400 days.
>
> It is therefore ordered that respondent be fined $20.00 per day for violations for a total fine of $48,000.00.

We note that this calculation does not specify a date for the completion of any of the projects but counts all days from the start of each project until the hearing date and cumulates the penalties imposed.

The statute prohibiting the unauthorized practice of architecture defines the practice of architecture as "the provision of services in connection with the design and construction of buildings which are designed for human occupancy or habitation," and states: "The services referred to include planning, providing preliminary studies, drawings, specifications, and other technical submissions, and administration of construction contract." Ark.

Code. Ann. § 17-14-102. There is no statutory authority to suggest that there is a continuing violation of the statute after the project has been completed or when further architectural services are no longer provided to the project.

■ The severity of the punishment for violation of the statute may range as high as $1,000 for each violation, with each day of violation constituting a distinct and separate offense. There is no statutory authority to impose multiple penalties for each day in which a person violates the statute. The criteria for imposition of penalties suggest that the purpose of the penalty is to safeguard public health. Arkansas Code Annotated section 17-14-301 states: "in order to safeguard life, health, and property, no unlicensed person shall practice architecture in this state. . . ." In the case before us, there were indications that plans and drawings were reviewed by registered and licensed architects, and there were no findings that public health and safety were threatened. Under these circumstances, we defer to the expertise of the Board, and find that the imposition of a penalty of twenty dollars for each violation, with each day of violation being subject to such a penalty, was not arbitrary or capricious.

■ However, we find nothing in the Board's order, or in the record before us, to enlighten the Board, or this court on review, as to how many days there were actual violations of the statute for the purpose of imposing a penalty. Certainly it appears obvious that no violation could occur after the completion of the particular job, and as we have already indicated, only one violation per actual day of violation may be assessed. We hold that it was arbitrary and capricious for the Board to assess a twenty-dollar per day penalty for each calendar day from the date each project was commenced up until the date of the hearing, and that this constituted an abuse of discretion. On this point, appellant is correct that the Board's decision must be reversed and remanded for additional findings consistent with this opinion.

### Oral Argument

We turn now to the final point on appeal. Appellant argues that the trial court erred by refusing to allow oral arguments pur-

suant to Ark. Code Ann. § 25-15-212(g) (Repl. 1996). The statute in question is part of the Administrative Procedures Act. The statute states that the court shall, "upon request, hear oral argument and receive written briefs." Ark. Code Ann § 25-15-212.

Appellant requested oral arguments in the conclusion of his brief in support of his petition for review of the Board's decision. The trial court did not make a ruling as to whether oral arguments should be held. The trial court allowed both parties to submit briefs detailing all the issues in the case and from these briefs made its final decision.

The actions by the trial court do not require reversal on this point. In *Bank of Glenwood v. Arkansas State Banking Bd.*, 260 Ark. 677, 543 S.W.2d 761 (1976), we refused to remand a case on the basis that the trial court made his ruling without allowing written briefs to be filed or oral arguments to be heard. In that case, as in the present case, the petitioner had included a request for "the court to hear additional evidence, to hear oral arguments, and receive written briefs" within the prayer for relief in his notice of appeal and petition for judicial review. *Id.* We held that in some instances we would remand a case to the circuit court upon the ground now argued, but that action was not appropriate under the facts currently before the court. *Id.* Here, we have determined that the case must be remanded on other grounds and therefore need not decide whether the failure to allow oral arguments in the circuit court would require reversal if that were the only error.

Affirmed in part; reversed and remanded in part.

SMITH, J., concurring in part and dissenting in part.

LAVENSKI R. SMITH, Justice, concurring in part; dissenting in part. I concur in the Court's decision reversing and remanding this case. However, I must write separately to address the constitutional issue raised by appellant. The majority refused to hear appellant's constitutional arguments because they were first raised before the circuit court and not before the administrative agency. The court cites *Arkansas Health Services Agency v. Desiderata, Inc.,* 331 Ark. 144, 958 S.W.2d 7 (1998), wherein this court adopts the "*Hamilton*" rule. The *Hamilton* rule requires even

constitutional issues to be raised at the Administrative Law Judge or Commission level because such issues often require an exhaustive analysis that is best accomplished by an adversary proceeding, which can only be done at the hearing level. *Hamilton v. Jeffry Stone Co.*, 6 Ark. App. 333, 641 S.W.2d 723 (1982).

This rationale is sound with respect to agencies and commissions such as the Workers' Compensation Commission that have extensive legal expertise and conduct numerous legal proceedings. However, it is much less persuasive when applied to professional and trade regulatory bodies, which, as in this case, consist entirely of members of that trade or profession.

Appellant wished to question the constitutionality of a state law as it is written. The State Board of Architects before which he appeared lacked the authority to determine such an issue. Administrative hearings before such bodies should not be presumptively analogous to trial court proceedings that follow our rules of civil procedure and evidence in respect to purely legal issues such as constitutionality. Appellant attempted to raise his constitutional objections to the circuit court. It unquestionably has the legal authority to hear and decide constitutional matters. Prior to *Arkansas Health Services*, this court on at least one occasion, heard an appeal from a circuit court decision where apparently the constitutionality of an agency rule was addressed for the first time on appeal to the circuit court. *Johnson v. Arkansas Board of Examiners in Psychology*, 305 Ark. 451, 808 S.W.2d 766, (1991). I find the following analysis of the Ninth Circuit Court of Appeals to be persuasive and a better rule than *Hamilton* for cases like the one at bar:

> Reid raises several constitutional issues which implicate the power and jurisdiction of the NTSB. First, she argues that the suspension process unconstitutionally infringed her right to pursue her chosen profession. Second, she contends that the "public interest" standard of 49 U.S.C. § 1429(a) is too indefinite to satisfy due process. Third, she asserts that the Administrator's ex parte sanction procedure violated her procedural due process rights. These arguments present general challenges to the constitutionality of section 1429(a) and its enforcement scheme, which are beyond the jurisdiction of the NTSB to determine. *See Salfi*,

422 U.S. at 765, 95 S.Ct. at 2466. As the Supreme Court has explained, "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions. . . . [W]hen constitutional questions are in issue, the availability of judicial review is presumed." *Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). Thus, we conclude that we must address the merits of proper constitutional arguments although they were not raised in the administrative proceeding.

*Reid v. Engen*, 765 F.2d 1457, 1461 (9th Cir. 1985). Unlike the majority, I would reach the constitutional issue in this case, and I therefore respectfully dissent.