Cite as 2021 Ark. App. 364

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-20-365

THOMAS HARTMAN

APPELLANT

V.

STATE OF ARKANSAS SEX
OFFENDER ASSESSMENT
COMMITTEE

APPELLEE

**Opinion Delivered** September 29, 2021

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT, SIXTH
DIVISION
[NO. 60CV-19-5652]

HONORABLE TIMOTHY DAVIS
FOX, JUDGE

AFFIRMED

## RITA W. GRUBER, Judge

Thomas Hartman brings this appeal pursuant to the Arkansas Administrative Procedure Act (APA).[1] Hartman registered as a sex offender in Wisconsin after having been convicted of second-degree sexual assault of a child in 1997. He moved to Arkansas in 2018 and registered with the Sex Offender Notification Assessment Program. The Community Notification Assessment Unit assigned him a community-notification level 3, which was affirmed by the Sex Offender Assessment Committee ("the Committee") after Hartman requested an administrative review. Hartman appealed to the Pulaski County Circuit Court, which affirmed. He appeals to us, arguing that the Committee's decision to assign him a

---

[1]The APA is codified at Arkansas Code Annotated §§ 25-15-201 to -218 (Repl. 2014 & Supp. 2021).

level 3 community notification is not supported by substantial evidence; is arbitrary and capricious; and constitutes an abuse of discretion. We affirm the Committee's decision.

Judicial review of Committee assignments of community-notification levels is governed by the APA, and our judicial review is premised on the recognition that administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts to determine and analyze legal issues affecting their agencies. *Brown v. Sex Offender Assessment Comm.*, 2014 Ark. App. 236, at 2. Our review is directed not to the decision of the circuit court but to the decision of the agency. When reviewing administrative decisions, we review the entire record to determine whether substantial evidence supports the agency's decision. *Halstead v. Sex Offender Assessment Comm.*, 2013 Ark. App. 445, at 3. We uphold the decision if it is supported by substantial evidence and is not arbitrary, capricious, or characterized by an abuse of discretion. *Id.*

It is Hartman's burden to prove that there is an absence of substantial evidence, which is given the strongest probative force in favor of the agency's ruling. *McQuay v. Ark. State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999). The question is not whether the testimony would have supported a contrary finding, but whether it would support the finding made. *Id.* at 345, 989 S.W.2d at 501–02. It is the prerogative of the Committee to believe or disbelieve any witness and to decide what weight to accord the evidence. *Id.* at 345, 989 S.W.2d at 502.

Hartman pleaded guilty to second-degree sexual assault of a child in 1997 in Wisconsin and was given a suspended sentence with probation. Within months, he violated his probation for having unsupervised contact with a minor, and he was incarcerated from

January 1998 through September 2003. He moved to Arkansas in 2018 and registered with the Sex Offender Notification Assessment Program, which assigned him a community-notification level 3. The Committee upheld this assessment on administrative review.

The offense arose from Hartman's interactions with a fifteen-year-old boy, JK, whom Hartman initially met at a restaurant where they both worked. Hartman talked with JK about God, invited him to church, and eventually invited him to live with Hartman and his wife after learning of JK's difficult home life. Hartman admitted that he was attracted to JK and hoped his relationship with him would lead to a sexual relationship. While JK lived with them, Hartman hugged and kissed him and gave him back massages. After Hartman's wife fell asleep at night, Hartman would often go into JK's room and get in bed with him. JK reported that he woke up one night and found Hartman rubbing his "butt and sticking his finger in [his] rectum." Another time, JK woke to find Hartman leaning over the top of him and rubbing JK's penis.

Hartman's pastor at the time, Jeff Burger, reported to the police that he had met with Hartman, JK, and Hartman's wife after an incident involving Hartman and JK. Hartman told Burger about several incidents involving JK, including a time when Hartman got an erection while JK was lying on his lap at their apartment. According to Hartman, JK was alarmed when he became aware of this. Hartman also told Burger that he had gotten in bed with JK and fondled his genitals and that JK had "freaked out," so they had come to meet with Burger. Burger told the police that he thought Hartman was "very manipulative" and would "do this again if he finds the right victim."

During this time, Hartman participated in a church group for boys between the ages of six and ten. Hartman would bring the boys to his home, where they would watch tv, play, or wrestle with him. Although none of the boys reported that Hartman had been inappropriate with them, JK told the police he wanted Hartman to stop doing this before he "gets involved and messes up other kids."

During his assessment interview with the Sex Offender Notification Assessment Program, Hartman said that he was still attracted to boys between the ages of fourteen and sixteen and stated that it would be disingenuous to deny it because a person does not just "wake up" one morning with no attraction to an age group to which one has been attracted. He indicated that he has learned how not to act on it. He admitted that he had inappropriately touched JK over his clothes but said that it had happened only once. He denied having touched JK's rectum and denied Burger's version of their conversation.

On appeal, Hartman argues that the Committee's decision to assign him a community-notification level 3 is not supported by substantial evidence and is arbitrary, capricious, and an abuse of discretion. He argues that the Committee disregarded relevant evidence including that he completed a degree in accounting, purchased his own home, and has an excellent employment history; his Vermont Assessment of Sex Offender Risk (VASOR) score was designated as low risk for violence and for reoffense; he has completed extensive sex-offender treatment; and the victim of his crime was not a stranger, lived in his home, and was not "prepubescent." He also argues that his "single offense" involved no violence, force, or threats. Finally, he contends that law enforcement found no evidence

4

that he was inappropriate with any of the boys in his church group and argues there is no support in the record that he was "grooming the boys."

The Sex Offender Registration Act of 1997 required that guidelines and procedures be put in place for the disclosure of relevant and necessary information regarding sex offenders to the public. *Gwaltney v. Sex Offender Assessment Comm.*, 2009 Ark. App. 668. These guidelines and procedures set forth the extent of information to be made public, depending on the offender's level of dangerousness, pattern of offending behavior, and the extent to which the information will enhance public safety. Ark. Code Ann. § 12-12-913(c)(2)(B) (Supp. 2021). An individual assessment of each sex offender's risk to the public must be made. Ark. Code Ann. § 12-12-917(b) (Supp. 2021). The assessor considers factors such as the offender's criminal history, the interview, a polygraph examination, any relevant mental-health records, psychological testing, actuarial instruments designed to assess individuals convicted of sexual offenses, and any other information relevant to the offender's history and/or pattern. *State Sex Offender Risk Assessment Comm. v. Wallace*, 2013 Ark. App. 654, at 3.

A level 1 notification typically applies when there is no prior history of sexual offending and the community can be protected with notification inside the home.[2] Level 1 notification is generally inappropriate when the offender has had "prepubescent victims, predatory behavior, sexual interest in children, a history of working with children or around children, [or] if the victim was a child[.]" *Id*. A level 2 notification is appropriate where

---

[2]Sex Offender Assessment Committee Guidelines and Procedures, https://www.sos .arkansas.gov/uploads/rulesRegs/Arkansas%20Register/2012/Dec12Reg/004.00.12-003.pdf, archived at https://perma.cc/2MGZ-MHDG.

notification inside the home is insufficient and requires notice to the offender's known victim preference and those likely to come into contact with the offender. *Id.* Level 3 offenders have a history of repeat offenses or strong antisocial, violent, or predatory personality characteristics requiring notification throughout the community. *Id.*

The Committee stated that it considered all the evidence highlighted by Hartman but then determined that substantial evidence supported the assessment of level 3 finding specifically as follows:

> Petitioner offended on a 15-year-old male to whom he had been a mentor and caregiver. Efforts to groom the victim are evident throughout the record. At the time they met, Petitioner was training as a manager at a restaurant where the victim worked. The victim reported that they had faith-based conversations during lunch breaks. Later, Petitioner disclosed being molested by an older male friend when he was younger as well as a lust for men as he grew older that included several sexual encounters with men. He was aware of the victim's troubled home life when he convinced the victim to live with him and enroll in the school associated with his church. He admits that the victim may have felt coerced because he could not live with his father who had been recently diagnosed with a mental illness. After the victim began living with him, Petitioner recounted falling asleep with the victim, hugging him, and giving him "minor pecks on the cheek, short pecks on the mouth." At the urging of Petitioner and his wife, the victim did not report the first instance of touching and penetration choosing instead to move out of Petitioner's apartment. The record indicates Petitioner convinced the victim to move back into the apartment after which the abuse resumed. Petitioner does not accept full responsibility for his behavior beginning with his continued denial of penetration. The victim reported concern to police that Petitioner had extensive contact with boys from the church between the ages of 8 and 15. The victim told police that Petitioner would bring the boys to his home for snacks, religious movies, and wrestling. He further stated that Petitioner's interaction with these boys mirrored the beginnings of his physical contact with Petitioner. Moreover, Petitioner's probation was revoked for having unsupervised contact with another 15-year-old male, and he received numerous prison disciplinaries for not following rules or attempting to circumvent them.

Although Hartman admitted having committed only one offense on JK, JK testified that there were numerous offenses. The Committee is free to believe or disbelieve any

witness, evidence, or testimony. *Brown v. Sex Offender Assessment Comm.*, 2014 Ark. App. 236, at 4. Moreover, the law governing sex-offender registration defines predatory as "an act directed at a stranger or a person with whom a relationship has been established or promoted for the primary purpose of victimization of that person or individuals over whom that person has control." Ark. Code Ann. § 12-12-903(9) (Supp. 2021). We conducted a de novo review of all the evidence, including the DVD of Hartman's assessment interview. Giving the evidence its strongest probative force in favor of the Committee's decision, we hold that it supports the level 3 assessment.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*John Wesley Hall* and *Samantha J. Carpenter*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Nga Mahfouz*, Senior Ass't Att'y Gen., for appellee.