Anthony NESTERENKO, D.C. *v.* ARKANSAS BOARD of CHIROPRACTIC EXAMINERS

CA 01-902                                    69 S.W.3d 459

Court of Appeals of Arkansas
Division I
Opinion delivered March 13, 2002

*William Bruce Blevins*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kim Evans*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. This is an appeal under the Administrative Procedures Act, Ark. Code Ann. §§ 25-15-201 *et seq.*, from the Pulaski County Circuit Court. The Board of Chiropractic Examiners (Board) imposed a civil penalty of $2,500 on the appellant, Dr. Anthony Nesterenko, for each of two violations of the Board's regulations prohibiting misleading advertisements and prohibiting unprofessional conduct by violating any other law or rule. The Board also placed appellant on probation for one year. The circuit court found that the Board did not misinterpret its own regulations, and therefore, its findings were not erroneous as a matter of law. The circuit court also found that the Board's

decision was supported by substantial evidence and was not arbitrary and capricious. The court, therefore, affirmed the Board's decision. Appellant argues two points on appeal: (1) that the Board's decision is not supported by substantial evidence, and (2) that punishment for violation of both regulations subjects him to double jeopardy because the same conduct was found to violate both regulations.

The Board received a complaint from another chiropractor, Dr. George Gray, Jr., alleging that an advertisement appellant had published in the *Arkansas Democrat-Gazette* was misleading. The advertisement's third paragraph stated:

> I am one of only two Specific Chiropractors in Arkansas. Specific Chiropractors understand the role that the nervous system plays in the overall health of people. We attempt to restore normal function to the nervous system to allow the body to achieve its fullest potential. Clinical experience indicates that the majority of patients with nervous system interference respond favorably to Specific Chiropractic, regardless of condition. Specific Chiropractic is the removal of interference to the nervous system with the sole intent of restoring normal function to the body without the use of dangerous drugs or surgery.

(Abstract p. 6.) Based on Dr. Gray's complaint, the Board issued an Order and Notice of Hearing, charging appellant with violations of regulation D(1), which states that "[a]dvertising by doctors of chiropractic should conform to professional standards, shall be truthful, not misleading, fraudulent or dishonest," and C(2)(c), which states that "[t]he following acts or activities by a licensee of this Board are considered to constitute unprofessional conduct and grounds for disciplinary action. . . . (c) Violating any rule or law or being a party to . . . the violation of the regulations of this Board or the laws of the State of Arkansas regulating the practice of chiropractic."

After a hearing, the Board issued an order finding that appellant had published an ad that discussed fibromyalgia and contained the quoted portion above; that appellant's action in publishing the ad violated regulation D(1); that the violation of regulation D(1) was itself a violation of regulation C(2)(c); and that the violation of the two regulations constituted grounds for the Board to levy a fine of not more than $5,000 for each violation, to place appellant on probation, or to suspend or revoke his license to practice chiropractic, or any combination thereof. Based on these findings, the Board

fined appellant $2,500 for each violation, for a total of $5,000, and placed appellant on probation for one year.

In its order, the Board does not specifically find that the ad is misleading, fraudulent, or dishonest. Further, the Board's findings do not state *how* appellant's ad violated the Board's regulation against advertising that is not truthful, or is misleading, deceptive, fraudulent, or dishonest. Appellant could have been disciplined under the rule for having an ad that did not meet professional standards, a term not defined by the regulations. Without more specific findings of fact, we are left to guess how and which part of regulation D(1) the Board determined that appellant had violated.

■ The threshold question in a case brought to this court from an administrative agency is whether the agency has followed the dictates of Ark. Code Ann. § 25-15-210(b)(2) (Repl. 1996) in providing concise and explicit findings of fact and conclusions of law, separately stated in its order. *See Gordon v. Cummings*, 262 Ark. 737, 561 S.W.2d 285 (1978); *Olsten Health Servs., Inc. v. Arkansas Health Servs. Comm'n*, 69 Ark. App. 313, 12 S.W.3d 656 (2000). If an agency fails to make adequate findings, the case may be remanded to it to correct any deficiencies. *See Floyd v. Arkansas State Bd. of Pharmacy*, 251 Ark. 626, 473 S.W.2d 866 (1971).

■ Because the Board has merely recited the conclusion that appellant violated regulation D(1), we are unable to determine the Board's view of the facts or the theory of law on which appellant's sanction was based. We addressed a similar situation in *Wright v. American Transp.*, 18 Ark. App. 18, 709 S.W.2d 107 (1986), where we quoted the following language from *Whispering Pines Home for Senior Citizens v. Nicalek*, 333 N.E.2d 324 (Ind. Ct. App. 1975):

> Once again, therefore, we attempt to tell the Board what a satisfactory specific finding of fact is.
>
> It is a simple, straightforward statement of what happened. A statement of what the Board finds has happened; not a statement that a witness, or witnesses, testified thus and so. It is stated in sufficient *relevant* detail to make it mentally graphic, *i.e.*, it enables the reader to picture in his mind's eye what happened. And when the reader is a reviewing court the statement must contain all the specific facts relevant to the contested issue or issues so that the court may determine whether the Board has resolved those issues in conformity with the law.

*Wright*, 18 Ark. App. at 21, 709 S.W.2d at 109 (emphasis in original). The Board in the case at bar did not explain in its findings of fact the basis for its conclusion that the ad was in violation of the regulations. Reviewing courts may not supply findings by weighing the evidence themselves, because that function is the responsibility of the administrative agency, which sees the witnesses as they testify. *Arkansas Sav. & Loan Ass'n Bd. v. Central Ark. Sav. & Loan Ass'n*, 256 Ark. 846, 510 S.W.2d 872 (1974).

> The findings are insufficient because there was a failure to incorporate therein a proper and acceptable finding of the basic or underlying facts drawn from the evidence. The Board's decision only amounts to the statement "We have heard the evidence. The evidence does not meet the requirements of the law." This is not enough.

*Id.* at 848, 510 S.W.2d at 873 (quoting *Oklahoma Insp. Bur. v. State Bd. for Prop. & Cas. Rates*, 406 P.2d 453 (Okla. 1965)). We remand to the Board for further proceedings consistent with this opinion.

Although we are remanding this case to the Board for further findings of fact and conclusions of law, we take this opportunity to address appellant's remaining argument.

█ Appellant's second argument is that, because he was punished under both regulations D(1) and C(2)(c) for the same conduct, he has been subjected to multiple punishments in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article 2, § 8, of the Arkansas Constitution. However, he makes no separate argument under the Arkansas Constitution. Therefore, his argument under the Arkansas Constitution must fail because he has given no reason to interpret similar provisions of the two constitutions differently. *See Diffee v. State*, 319 Ark. 669, 894 S.W.2d 564 (1995); *Ridenhour v. State*, 305 Ark. 90, 805 S.W.2d 639 (1991).

█ The Double Jeopardy Clause of the Fifth Amendment provides in part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." In *Blockburger v. United States*, 284 U.S. 299 (1932), the Court held:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact

which the other does not. . . . "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

*Blockburger,* 284 U.S. at 304 (quoting *Gavieres v. United States,* 220 U.S. 338, 342 (1911)).

■ In *Grady v. Corbin,* 495 U.S. 508 (1990), the Supreme Court held that, in addition to passing the *Blockburger* test, a subsequent prosecution must satisfy a "same-conduct" test to avoid the double jeopardy bar. In *United States v. Dixon,* 509 U.S. 688 (1993), the Court overruled *Grady* and held that the *Blockburger* test was the only one to be applied.

In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. The same-elements test, sometimes referred to as the "Blockburger" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

*Dixon,* 509 U.S. at 696; *see also Craig v. State,* 314 Ark. 585, 863 S.W.2d 825 (1993); *Penn v. State,* 73 Ark. App. 424, 44 S.W.3d 746 (2001); *Beasley v. State,* 47 Ark. App. 92, 885 S.W.2d 906 (1994).

■ The Double Jeopardy Clause protects only against the imposition of multiple *criminal* punishments for the same offense, *Hudson v. United States,* 522 U.S. 93 (1997); *Helvering v. Mitchell,* 303 U.S. 391 (1938), and then only when such occurs in successive proceedings, *see Missouri v. Hunter,* 459 U.S. 359 (1983). The Arkansas Supreme Court has also adopted this interpretation of double jeopardy. *Pyron v. State,* 330 Ark. 88, 953 S.W.2d 874 (1997); *Reed v. Alcoholic Beverage Control Div.,* 295 Ark. 9, 746 S.W.2d 368 (1988).

■ In *Pyron, supra,* the Arkansas Supreme Court rejected a double jeopardy challenge to a DWI prosecution based on the fact that the motorist had already had his driver's license suspended for 180 days. The court began by quoting from *Helvering v. Mitchell, supra*: "Remedial sanctions may be of varying types. One which is characteristically free of the punitive criminal element is revocation

of a privilege temporarily granted." *Pyron, supra,* at 90, 953 S.W.2d at 875.

■ The court then quoted *Sims v. State,* 326 Ark. 296, 930 S.W.2d 381 (1996), for the standard for determining whether a civil forfeiture is "punishment" for double jeopardy purposes and held that this standard applied to the suspension provision. The *Sims* test first asks whether the legislature intended for the statute to be a remedial civil sanction or a criminal penalty. Second, it asks whether the administrative proceedings are so punitive in nature as to establish that they may not legitimately be viewed as civil in nature, "despite any legislative intent to establish a civil remedial mechanism." *Id.* at 298, 930 S.W.2d at 382 (citing *United States v. Ursery,* 518 U.S. 267 (1996)). The court did not find that the penalty "is so divorced from any remedial goal that it constitutes 'punishment' [under] double jeopardy analysis." *Pyron, supra,* at 92, 953 S.W.2d at 876 (quoting *United States v. Halper,* 490 U.S. 435, 443 (1989)). The court then held that the temporary revocation of the privilege of driving for refusal to submit to a chemical analysis is rationally related to the purpose of the statute, which is to protect the public from intoxicated drivers and to reduce alcohol-related accidents.

■ In *Reed v. Alcoholic Beverage Control Division, supra,* Reed argued that her acquittal of criminal charges barred the administrative suspension of her liquor license based on that same conduct. The court affirmed the suspension and held that the Double Jeopardy Clause is limited to criminal proceedings and does not preclude separate civil proceedings arising out of the same incident. *Reed, supra.*

■ Appellant is not being "punished" in the double jeopardy sense. First, the sanction at issue is labeled a "civil penalty" by statute. He is not being suspended from practice. Second, a license to practice as a chiropractor is a privilege granted by the State and may be withdrawn if a practitioner fails to meet certain standards of professional conduct. *See, e.g., Eclectic State Med. Bd. v. Beatty,* 203 Ark. 294, 156 S.W.2d 246 (1941). Third, the remedial goal served by the penalty is the protection of the public from false, deceptive, or misleading advertising by chiropractors concerning what ailments, illnesses, and conditions can and cannot be effectively treated by a chiropractor. Because the Board supervises chiropractors in order to protect the public from harm, *see* Ark. Code Ann. § 17-81-301 (Repl. 1995), the type of administrative sanction issued by the Board in this case falls within *Pyron's* holding that, if a sanction

is not so divorced from any remedial goal, then it does not constitute "punishment" under double jeopardy analysis. *Pyron, supra,* at 92, 953 S.W.2d at 876.

■ Courts of other jurisdictions have held that double jeopardy does not apply in administrative disciplinary cases where there has been no criminal conduct leading to the disciplinary sanction at issue. *See Hudson v. United States,* 522 U.S. 93 (1997) (holding that administrative proceeding resulting in monetary sanctions and occupational disbarment was civil, not criminal, and thus presented no double jeopardy bar to subsequent criminal prosecution for banking law violations); *Devine v. Goodstein,* 680 F.2d 243 (D.C. Cir. 1982) (holding that double jeopardy did not apply in civil administrative disciplinary hearings, especially where there was no threat of criminal prosecution).

■ Finally, the fact that the Board is authorized by statute to levy civil penalties for each violation is sufficient to take this case out of the reach of double jeopardy. In *Missouri v. Hunter, supra,* the Supreme Court held that, where a legislature specifically authorizes cumulative punishments under two separate statutes, regardless of whether the two statutes proscribe the same conduct under the *Blockburger* test, a court's task of statutory construction is at an end, and a person may be punished under both statutes in a single proceeding.

Affirmed in part; reversed and remanded in part with directions.

ROBBINS and CRABTREE, JJ., agree.