Robert D. HOLLOWAY *v.*
ARKANSAS STATE BOARD OF ARCHITECTS

02-1096 101 S.W.3d 805

Supreme Court of Arkansas
Opinion delivered April 3, 2003

[Petition for rehearing denied May 8, 2003.]

*Hankins & Hicks*, by: *Stuart W. Hankins* and *A. Vaughn Hankins*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Warren Readnour*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. We granted the Arkansas State Board of Architects' petition for review in this appeal to resolve an apparent conflict between the court of appeals' decision in this case and prior case law.

Appellant Robert Holloway is a licensed professional engineer. In 1999, Holloway prepared and filed plans for a pre-engineered metal building to be assembled for the Rosenbaum

Industrial Supply Facility on Doyle Venable Road in North Little Rock. On September 21, 1999, Tim Yelvington, an architect, filed a complaint with the Arkansas State Board of Architects, alleging that Holloway, as a non-architect, had designed and stamped different aspects of the project. Acting on Yelvington's complaint, the Board sent a letter to Holloway on November 10, 1999, notifying him of Yelvington's complaint. Holloway responded to the Board's letter, asserting that it was his understanding that his work on the facility was well within the realm of activity of engineering.

On March 1, 2000, the Board served an order and notice of hearing on Holloway, alleging that Holloway had practiced architecture without a license, in violation of Ark. Code Ann. § 17-15-301 (Repl. 2001). The Board conducted a hearing on May 11, 2000. At that hearing, the only witness to testify was John Harris, Director of the Board. Holloway did not appear, but his attorneys were present. The Board found that Holloway had practiced architecture without a license, and it imposed a fine of $5,000 pursuant to Ark. Code Ann. § 17-15-203(d)(4)(A)(i) (Repl. 2001).

Holloway filed a timely appeal to the Pulaski County Circuit Court, and reasserted the arguments he had raised before the Board. In that appeal, Holloway alleged first that the statutes defining the practice of architecture and the practice of engineering are void for vagueness and, as applied to him, the statutes violated his due-process rights. In addition, Holloway argued that the Board had failed to make necessary findings of fact, and that the civil penalty imposed upon him was arbitrary, capricious, and an abuse of discretion. Finally, he asserted that the Attorney General's office should be disqualified as counsel for the Board of Architects due to a conflict of interest. On November 22, 2000, the circuit court heard the matter, and, on December 11, 2001, it affirmed the Board on all four issues.

Holloway then appealed to the court of appeals, which considered the same four arguments that were presented to the Board and the circuit court. The court of appeals held that Holloway did not preserve his constitutional issue because the Board did not rule on it; that court remanded the case to the Board for further fact finding and for a ruling on the constitutional question. The court of appeals also remanded the case so the Board could make further findings of fact concerning whether Holloway's actions fell within

the definition of the practice of engineering. That court also held that, because it was remanding the case, it was vacating the civil-penalties argument. The court of appeals did address and affirm the trial court's final ruling that the Attorney General's office was not disqualified merely because it represented both the Board of Architects and the Board of Engineers. We subsequently granted the Board's petition for review.

■■ Upon a petition for review, we consider a case as though it has been originally filed in this Court. *Sharp County Sheriff's Office v. Ozark Acres Improvement Dist.*, 349 Ark. 20, 75 S.W.3d 690 (2002); *Edens v. Superior Marble & Glass*, 346 Ark. 487, 58 S.W.3d 369 (2001). Our review is directed not toward the circuit court, but toward the decision of the agency. *Arkansas State Police Comm'n v. Smith*, 338 Ark. 354, 994 S.W.2d 456 (1999). That is so because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *McQuay v. Arkansas State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999); *Social Work Licensing Board v. Moncebaiz*, 332 Ark. 67, 962 S.W.2d 797 (1998). Our review of administrative decisions is limited in scope. Such decisions will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *McQuay, supra; Wright v. Arkansas State Plant Board*, 311 Ark. 125, 842 S.W.2d 42 (1992).

■ Holloway's first argument on appeal is that the statutes defining the practice of architecture and the practice of engineering are void for vagueness. We initially need to mention that our review of the record reflects that Holloway's counsel, at the Board hearing, raised this constitutional issue challenging the statutes defining the practices of architecture and engineering. Counsel made his point as follows:

> "We are challenging also the definition of the practice of architecture in [section] 17-15-102, in that it is unconstitutionally vague and is in direct conflict with Arkansas statute[s] 17-30-101 and 17-30-104. So that it is our assertion that it is void for vagueness."

Sections 17-30-101 and 17-30-104 pertain to the practice of engineering. The Board, through its hearing officer, responded that it noted Holloway's objection and overruled it. Because Holloway

raised this constitutional issue before the Board and obtained the Board's ruling on it, we conclude that Holloway preserved his argument on appeal. *See Arkansas Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001); *AT&T Communications of the Southwest v. Arkansas Pub. Serv. Comm'n.*, 344 Ark. 188, 40 S.W.3d 273 (2001).

We turn now to Holloway's first point for reversal: the statutes defining the practice of architecture and engineering are void for vagueness and, as applied in this case, constitute a violation of Holloway's due-process rights. Holloway first cites Ark. Code Ann. § 17-15-102(5)(A)(i) and (ii) (Repl. 2001), which read as follows:

> (A)(i) The "practice of architecture" means the provision of, or offering to provide, those services hereinafter described in connection with the design and construction, enlargement, or alteration of a building or group of buildings, and the space within and surrounding such buildings, which is designed for human occupancy or habitation. The services referred to include planning, providing preliminary studies, designs, drawings, specifications, and other technical submissions, and administration of construction contracts.
>
> (ii) Provided, that *the practice of architecture shall not include the practice of engineering* as defined in the Arkansas Engineering Act, § 17-30-101 *et seq.*, or the practice of contracting as defined in the Contractors Licensing Law, § 17-25-101 *et seq.*, but a registered architect may perform such engineering work as is incidental to the practice of architecture, and *an engineer may practice such architectural work as is incidental to the practice of engineering.*

(Emphasis added.) Section 17-15-102(5)(B) further provides the following:

> (B) The provisions of this chapter *affirm the legal authority of an engineer* licensed under the Arkansas Engineering Act, § 17-30-101 *et seq.*, *to provide consultation, investigation, evaluation, planning, and design of buildings intended for the accommodation of equipment, vehicles, goods, and/or processes or other utilitarian function, with human occupancy including office space as required for the support of these functions*, provided the engineer is practicing within his or her area of competency as defined in the Arkansas Engineering Act, § 17-30-101 *et seq*[.]

(Emphasis added.)

Also pertinent to Holloway's argument is Ark. Code Ann. § 17-15-302(a)(1) (Repl. 2001), which exempts licensed engineers from the provisions governing architects so long as the engineer's work is incidental to the practice of engineering and provided the engineer does not use the designation "architect."

Holloway next refers to Ark. Code Ann. § 17-30-101(4)(A) (Repl. 2001), which defines the practice of engineering as follows:

> [The] "[p]ractice of engineering" means any service or creative work, the adequate performance of which requires engineering education, training, and experience in the application of special knowledge in the mathematical, physical, and engineering sciences to services or creative work such as consultation, investigation, evaluation, planning, and design of engineering works and systems relating to the use of air, land, water, municipal and regional planning, forensic services, engineering teaching of advanced engineering subjects or courses related thereto, engineering surveys, and the inspection of construction for the purpose of assuring compliance with drawings and specifications, any of which embraces service or work, either public or private, in connection with any utilities, structures, buildings, machines, equipment, processes, work systems, or projects *including such architectural work as is incidental to the practice of engineering.*

(Emphasis added.) The engineering statutes further provide the following:

> The provisions of this chapter affirm the legal authority of an engineer licensed under its provisions to *provide consultation, investigation, evaluation, planning, and design of buildings intended for accommodation of equipment, vehicles, goods, and/or processes or other utilitarian functions, with human occupancy including office space as required for the support of these functions, provided the engineer is practicing within his or her area of competency* as defined by this chapter.

Ark. Code Ann. § 17-30-104 (emphasis added).

In making his argument that his due-process rights are violated because the foregoing statutory provisions are vague, Holloway cites *Thompson v. Arkansas Social Services*, 282 Ark. 369, 669 S.W.2d 878 (1984), for his proposition that statutes governing architects and engineers fail to provide a person of ordinary intelligence fair notice as to what conduct is forbidden. For example, Holloway alludes to language contained in § 17-30-104 that permits a licensed engineer to plan and design "buildings intended for

accommodation of equipment, vehicles, goods, and/or processes or other utilitarian functions, with human occupancy including office space as required for the support of these functions." This same language is found in § 17-15-102(5)(B), which governs architects. Holloway submits that the ambiguity and vagueness of the language used in these statutes is readily apparent, asking rhetorically, "How much 'human occupancy including office space' do these provisions permit? To what does 'other utilitarian functions' refer? When does an engineer cross the line and design a building with too much 'human occupancy including office space?'" He urges that the statutes involved fail to give any guidance to determine the answers to these questions. Instead, he says, the legal definitions of the practice of architecture and engineering must turn on the facts of each case.

■ The Board rejoins Holloway's argument by first reiterating the settled law that a statute is presumed constitutional, and the party challenging it must demonstrate otherwise. *Craft v. City of Fort Smith*, 335 Ark. 417, 984 S.W.2d 22 (1998). Because statutes are presumed to be framed in accordance with the United States Constitution, we do not hold them invalid unless the conflict with the Constitution is clear and unmistakable. *Shoemaker v. State*, 343 Ark. 727, 38 S.W.3d 350 (2001). Moreover, all doubts are resolved in favor of a statute's constitutionality. *See State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999); *Foster v. Jefferson County Bd. of Election Comm'rs*, 328 Ark. 223, 944 S.W.2d 93 (1997).

■ ■ For a statute to avoid being vague, it must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden and it must not be so vague and standardless that it leaves judges free to decide, without any legally fixed standards, what is prohibited and what is not on a case-by-case basis. *Thompson v. Arkansas Social Servs.*, 282 Ark. 369, 669 S.W.2d 878 (1984). The subject matter of the challenged law also determines how stringently the vagueness test will be applied. For instance, if the challenged law infringes upon a fundamental right, such as liberty or free speech, a more stringent vagueness test is applied; in contrast, however, if the law merely regulates business activity, a less stringent analysis is applied and more flexibility is allowed. *Craft, supra* (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489 (1982)). A statute is not to be struck down

as vague only because marginal cases could be put where doubts might arise. *Thompson, supra* (citing *Davis v. Smith*, 266 Ark. 112, 583 S.W.2d 37 (1979)).

■ A critical element of the definition of the practice of architecture is that the building be designed for human occupancy or habitation. ₊On the other hand, the statutes governing the practice of engineering and the practice of architecture both recognize that a licensed engineer has the authority to perform work on buildings that are "intended for accommodation of equipment, vehicles, goods, and/or processes or other utilitarian functions, with human occupancy including office space as required for the support of those functions." § 17-30-104. In addition, there are instances in which an engineer can perform services which would fall into the definition of architectural services if those services are "incidental to the practice of engineering." § 17-30-101(4)(A). "Incidental" means "depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal[.]" *Black's Law Dictionary* 762 (6th ed. 1990).

. ■ While it is true that the statutes governing engineers do not specify what is meant when they state that an engineer may provide services and consultation on buildings intended for "utilitarian functions, with human occupancy including office space as required for the support of these functions," a person of ordinary intelligence could easily conclude that this would mean that "human occupancy" is not to be the primary purpose of a building planned by an engineer. Supporting this conclusion is the language in the architecture statutes that provides that the practice of architecture includes the planning of buildings "which [are] designed for human occupancy or habitation." § 17-15-102(5)(A)(i). Reading these together, a person of ordinary intelligence can glean that architects plan and design buildings primarily intended for people to live and work in, and engineers plan and design buildings primarily "intended for accommodation of equipment, vehicles, goods, and/or processes." In sum, the statutes Holloway challenges are not void for vagueness.

Holloway's second point on appeal is that the Board failed to make necessary findings of fact. He asserts specifically that the Board was required to "make a finding that the 'human occupancy including office space' was not required for the support of the 'utili-

tarian function' being made in the space in the building that was not office space." The Board made five findings of fact, as follows:

1. Robert D. Holloway is not a licensed architect in the State of Arkansas.

2. Mr. Holloway prepared drawings and specifications for the Rosenbaum Industrial Supply facility on Doyle Venable Road, North Little Rock, Arkansas. The project is a pre-engineered metal building with a dry-vit facade.

3. The approximate size of the project is 144 feet by 93 feet. The building consists mainly of office space with a small amount of storage.

4. The primary purpose of the facility is for human occupancy or habitation and the cost is in excess of $100,000.

5. The work performed by Mr. Holloway [was] not incidental to the practice of engineering.

In support of his arguments, Holloway points out that the only witness to testify, Board Director John Harris, never testified that the "human occupancy" part of the building, comprising approximately 70% of the building, was not required for the support of a utilitarian function that could take place in the part of the building that was not office space. He also suggests that there are situations where a building might need up to 75% of its office space to support some "utilitarian function" that only takes up 25% of the building; however, he does not provide examples of such situations.

■ The Administrative Procedures Act, Ark. Code Ann. § 25-15-201 et seq. (Repl. 2002), requires that a "final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." § 25-15-210(b)(2) (Repl. 2002).

■ ■ The court of appeals has described a "finding of fact" as "a simple straightforward statement of what happened. A statement of what the Board finds has happened; not a statement that a witness, or witnesses, testified thus and so. . . . [W]hen the reader is a reviewing court the statement must contain all specific facts relevant to the contested issue or issues so that the court may determine whether the Board has resolved those issues in conformity with the law." *Nesterenko v. Arkansas Bd. of Chiropractic Exam'rs,*

76 Ark. App. 561, 69 S.W.3d 459 (2002). The purpose of requiring such factual findings is that they benefit the court in the following way: facilitating judicial review; avoiding judicial usurpation of administrative functions; assuring more careful and administrative consideration; aiding the parties in planning for hearings and judicial review; and keeping an agency within its jurisdiction. *Gordon v. Cummings*, 262 Ark. 737, 561 S.W.2d 285 (1978).

█ The Board's findings in this case contain sufficient facts relevant to the contested issue so that this court can determine whether the Board has resolved those issues in conformity with the law. These findings were based on the testimony of John Harris, the Director of the Board, who stated that he went to the site, walked around the building, measured it, and looked inside. He averred that it appeared to consist largely of office space, including restrooms, and although there was a large empty space, comprising the 20–25% of the building that was not obviously office space, the space looked like it could be partitioned out into office space at a later date. Harris also testified about the customary cost per square foot for a building of that sort, opining that it would go for $85.00 to $100.00 per square foot. Although Holloway objected to Harris's testifying about the cost of the building, he offered no testimony or evidence to rebut Harris's figures. On cross-examination, Harris conceded that he did not call anyone to ask what the building's purpose was, but insisted that, based on the plans and his own observation of the building, it was "obviously office space."

The Board's findings reflected the facts to which Harris testified: the Board found that Holloway was not a licensed architect; Holloway had prepared drawings and specifications for the building; the building was approximately 144 by 93 feet and consisted mainly of office space; the primary purpose of the facility was for human occupation and the cost was in excess of $100,000; and the work was not incidental to the practice of engineering. Because the findings incorporate a "proper and acceptable finding of the basic or underlying facts drawn from the evidence," *Nesterenko*, 76 Ark. App. at 567, the Board's factual findings were sufficient; therefore, we reject Holloway's second point as having no merit.

Holloway's third point is that the penalty imposed by the board was arbitrary, capricious, and an abuse of discretion, because the statute authorizing the imposition of a civil penalty does not

provide any guidelines or standards for imposing the penalty, and because the findings of the Board and the imposition of the penalty are not supported by substantial evidence.

Section 17-15-203(d)(4)(A)(i) provides as follows:

> After providing notice and a hearing, the examining body may levy civil penalties, in an amount not to exceed five thousand dollars ($5,000) for each violation, against those individuals or entities found to be in violation of this chapter or rules and regulations promulgated thereunder.

Holloway argues that, because the foregoing statute does "not provide any guidelines or standards for determining when and under what circumstances the imposition of the maximum civil penalty is appropriate," it bestows "unbridled discretion on [the Board] to levy the maximum civil penalty in any manner it chooses, regardless of the nature or severity of the violation." He relies on *Alcoholic Beverage Control Division v. R.C. Edwards Distributing Co.*, 281 Ark. 336, 681 S.W.2d 356 (1984), for his argument that such a degree of discretion is an unlawful delegation of legislative powers.

In delegating legislative authority, the General Assembly must spell out appropriate standards for the guidance of the administrative body by which the power is to be exercised. *Arkansas St. Bd. of Pharmacy v. Hall*, 243 Ark. 741, 421 S.W.2d 888 (1967). Further, although discretionary power may be delegated by the legislature to the licensing authority, it is essential that reasonable guidelines be provided. *McQuay v. State Bd. of Architects, supra*. In *R.C. Edwards, supra*, on which Holloway relies, this court invalidated a liquor-distributorship regulation that provided, in part, that "[n]o person holding a wholesale permit shall add an additional brand to his stock without first securing the written approval of the Director, and no manufacturer shall transfer a brand from one wholesale distributor to another or create dual distributorships on the same items without first securing the written approval of the Director." Because the regulation did not define "dual distributorship," and because it did not set out a time frame or limit to regulate timely approval or disapproval of a petition, this court held that the statute was too vague and indefinite. *R.C. Edwards*, 284 Ark. at 339.

Here, however, the statute defines the prohibited activity — i.e., the practice of architecture by one not licensed to

do so — and provides that penalties will be imposed for the violation of the statute. In addition, the statute explicitly provides for notice and a hearing prior to the levying of civil penalties, and there must be a finding that the person has committed the unauthorized practice of architecture, as defined by the legislature. Further, the penalty is capped at $5,000. If the court were to accept Holloway's apparent suggestion that the General Assembly should specify the exact amount of a fine for every type of violation, then the Board would have no discretion at all, even though discretionary power may be delegated by the legislature to the licensing authority. *See McQuay v. State Bd. of Architects, supra.*

 Holloway further argues that the penalty should be reversed because the Board did not make a specific finding that property or the public's health or safety was threatened or continue to be threatened as a result of Holloway's unauthorized practice of architecture. However, as the Board points out, the statute itself contains a legislative determination that the unauthorized practice of architecture *is* a threat to the public health and safety. Ark. Code Ann. § 17-15-301 (Repl. 2002), which sets out the license requirement for architects, provides as follows:

> *In order to safeguard life, health, and property, no person shall practice architecture in this state, . . . unless the person shall have secured from the examining body a certificate of registration and license in the manner hereinafter provided* and shall thereafter comply with the provisions of this chapter governing the registration and licensing of architects.

(Emphasis added.) The legislature determined that the unauthorized practice of architecture is a threat to the public; therefore, in order to safeguard life, health, and property, no person may practice architecture without having secured a certificate of registration and a license.

 Finally, Holloway asserts that the imposition of the civil penalty was not supported by substantial evidence. However, a reviewing court will not substitute its judgment for that of an administrative agency unless the decision of the agency is arbitrary and capricious. *See Arkansas Appraiser Licensing & Certification Bd. v. Biles*, 320 Ark. 110, 895 S.W.2d 901 (1995). The testimony offered by John Harris, discussed above, supports the conclusion that the Board's findings were supported by substantial evidence, and this court has held that, where a decision is so supported, it automatically follows that the decision cannot be classi-

fied as unreasonable or arbitrary. *See Wright v. Arkansas State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992).

Holloway's fourth principal argument is that the Attorney General's office had an irreconcilable conflict of interest in representing the Board of Architects, because it also represents the State Board of Registration for Professional Engineers and Land Surveyors ("the Board of Engineering") in disciplinary proceedings against engineers. He asserts that it is "manifestly unjust for the Attorney General to advocate and aid in the imposition of a civil penalty against a licensed engineer pursuant to the [Board of Architects'] subjective interpretation of the legal definitions of the practices of architecture and engineering while, at the same time, the Attorney General is called upon to advocate and aid in the imposition of a civil penalty against a licensed architect pursuant to the Board of Engineers' subjective interpretation of the legal definitions of the practices of engineering and architecture."

 In the present case, however, the Attorney General is only representing the Board of Architects, not the Board of Engineering; that Board is in no way involved in this case. There is no "call to advocate and aid in the imposition of a civil penalty against a licensed architect" by the Board of Engineers. There is only the proceeding by the Board of Architects against Holloway. Therefore, it is not immediately apparent that there is a conflict, since the Attorney General is not representing two sides with conflicting interests.

 Secondly, the Attorney General is not precluded from representing opposing agencies. Ark. Code Ann. § 25-16-702(a) (Repl. 2002) establishes that "the Attorney General shall be the attorney for all state officials, departments, institutions, and agencies." Section 25-16-702(b) further states that "[a]ll office work and advice for state officials, departments, institutions, and agencies shall be given by the Attorney General and his or her assistants." Finally, Ark. Code Ann. § 17-15-203(c) (Repl. 2001) expressly provides that the Board of Architects shall be entitled to the services of the Attorney General; and Ark. Code Ann. § 17-30-205 (Repl. 2001) provides that the Attorney General or his or her assistant shall act as legal advisor to the Board of Engineers.

 Therefore, because the Attorney General is statutorily obligated to represent these state agencies, and because there is no

indication that the Board of Architects and the Board of Engineers will develop adverse interests in this litigation, there was no error in either the Board of Architects' or the circuit court's refusal to disqualify the Attorney General.

Affirmed.

CORBIN, J., not participating.