Michael TESTON *v.* ARKANSAS STATE BOARD of CHIROPRACTIC EXAMINERS

04-420                                                    206 S.W.3d 796

Supreme Court of Arkansas
Opinion delivered April 7, 2005

[Rehearing denied May 12, 2005.*]

---

* BROWN and IMBER, JJ., not participating.

*Gill Elrod Ragon Owen & Sherman, P.A.*, by: *John P. Gill* and *Derrick Davidson*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Lori L. Freno*, Ass't Att'y Gen., for appellee.

*Friday, Eldredge & Clark, LLP*, by: *Robert S. Shafer* and *Carla G. Spainhour*, for amicus curiae Arkansas State Board of Physical Therapy.

*Odin, Feldman & Pittleman, P.C.*, by: *Thomas R. Daly*, for amicus curiae American Chiropractic Association.

*Henry M. Rubinstein*, for amicus curiae International Chiropractors Association.

*John J. Bennett*, for amicus curiae American Physical Therapy Association.

*Tucker Arensberg, P.C.*, by: *Richard B. Tucker, III* and *J. Kent Culley*, for amicus curiae Federation of State Boards of Physical Therapy.

TOM GLAZE, Justice. This appeal was certified to this court by the court of appeals in order to address apparent conflicts between the statutes governing the practice of chiropractic and the practice of physical therapy. Appellant Michael Teston appeals from an order of the Pulaski County Circuit Court affirming a decision by the Arkansas State Board of Chiropractic Examiners that Teston practiced chiropractic without a license.

Teston is a licensed physical therapist. From January 2001 through April 2001, Teston treated Katherine Fryar after she had been injured as a result of a car accident. In early 2002, Fryar filed

a complaint with the Arkansas State Board of Chiropractic Examiners ("the Board") against Teston, which resulted in the Board sending an investigator, Dennis Hendrix, to Teston's office in May of 2002. While Hendrix was there, Teston performed certain treatment maneuvers on Hendrix. Based on Hendrix's investigation, the Board sent Teston a notice of hearing in which the Board alleged that Teston was practicing chiropractic without a license, in violation of Ark. Code Ann. § 17-81-303 (Repl. 2002).

During the pendency of the Chiropractic Board's investigation of Teston, Teston sought a declaratory order from the Arkansas State Board of Physical Therapy ("the Physical Therapy Board") pursuant to Ark. Code Ann. § 25-16-206 (Repl. 2002). After reviewing Fryar's and Hendrix's medical records and written statements, the Physical Therapy Board found that the treatments administered to both Fryar and Hendrix by Teston "were within the scope of the practice of physical therapy." The Physical Therapy Board concluded that Teston provided treatment within the scope of the practice of an individual providing physical therapy services. The Physical Therapy Board's declaratory order was entered on October 17, 2002.

On December 10, 2002, the Chiropractic Board held its hearing on Fryar's complaint, and at the hearing, Fryar testified that Teston's treatment of her consisted of, among other things, putting pressure on her spine such that the joints would pop. Fryar further stated that she had been to a chiropractor before, and the things Teston did to her felt like what the chiropractor had done. Fryar also said that Teston referred to what he was doing as "releasing the joint." Investigator Hendrix likewise testified that Teston performed maneuvers on him that resulted in a "popping" or "snapping" in his spine.

Following the hearing, the Board issued its findings of facts and conclusions of law, in which the Board determined that Teston's treatment of both Fryar and Hendrix constituted the practice of chiropractic. Specifically, the Board stated that, based on both Fryar's and Hendrix's "testimonial description of [the patients' and Teston's] body and hand positions, pressure used, documentary evidence submitted, and testimony of the various expert witnesses, the Board finds that the maneuver[s] described by [Fryar and Hendrix] [were] . . . spinal manipulation[s] [that] can only be performed by licensed chiropractors in the State of Arkansas." As a result, the Board found that Teston's actions violated Ark. Code Ann. § 17-81-303(a)(1) (Repl. 2002) (prohib-

iting the practice of chiropractic without a license), and fined him $5,000 for each violation, for a total of $10,000.

Teston filed a petition for judicial review in the Pulaski County Circuit Court on January 17, 2003, alleging that the Board's decision was "in violation of constitutional and statutory provisions; was in excess of the Board's statutory authority; was made upon unlawful procedure; was not supported by substantial evidence; and was arbitrary, capricious, and an abuse of discretion." The trial court denied Teston's petition and affirmed the Board's decision. Teston filed a timely notice of appeal from the circuit court's order, and on appeal to this court, he raises the following four points: 1) there is no substantial evidence that Teston was subject to the Arkansas Chiropractic Practices Act and not exempt due to performing procedures within the scope of the Arkansas Physical Therapy Act; 2) the Chiropractic Board's order should be reversed because it failed to follow statutory requirements that it make findings of fact; 3) the Chiropractic Act's prohibition against a physical therapist's performing a "manipulation" is unconstitutionally void for vagueness; and 4) the Chiropractor Board's order is not supported by substantial evidence.

We address Teston's first and fourth points together, as both arguments pertain to the quantity and quality of the evidence presented to the Board. Our standard of review regarding administrative decisions is well developed. Judicial review of agency decisions is governed by the Arkansas Administrative Procedure Act, Ark. Code Ann. § 25-15-212 (Repl. 2002). The appellate court's review is directed not toward the circuit court, but toward the decision of the agency. *Williams v. Arkansas State Board of Phys. Therapy*, 353 Ark. 778, 120 S.W.3d 581 (2003). That is so because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *Id.*; *State Police Comm'n v. Smith*, 338 Ark. 354, 994 S.W.2d 456 (1999); *McQuay v. Arkansas State Board of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999). Our review of administrative decisions is limited in scope. *McQuay, supra.* Such decisions will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *McQuay, supra*; *In re Sugarloaf Mining Co.*, 310 Ark. 772, 840 S.W.2d 172 (1992).

We will not reverse the Board's decision if there is any substantial evidence to support it. *Arkansas Board of Examiners v.*

*Carlson*, 334 Ark. 614, 976 S.W.2d 934 (1998). Substantial evidence is evidence that is valid, legal, and persuasive and that a reasonable mind might accept to support a conclusion and force the mind to pass beyond speculation and conjecture. *Id*. The question is not whether the testimony would have supported a contrary finding, but whether it would support the finding that was made. *Id*. It is the prerogative of the board to believe or disbelieve any witness and to decide what weight to accord the evidence. *Id*. Similarly, the construction of a state statute by an administrative board or agency will not be overturned unless it is clearly wrong. *Thomas v. Arkansas Dep't of Human Servs.*, 319 Ark. 782, 894 S.W.2d 584 (1995). The appellant has the burden of proving that there is an absence of substantial evidence. *McQuay, supra*.

The party challenging the agency's action must prove that such action was willful and unreasonable, without consideration and with a disregard of the facts or circumstances of the case. *Williams, supra*; *Moore v. King*, 328 Ark. 639, 945 S.W.2d 358 (1997). To establish an absence of substantial evidence to support the decision the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Williams, supra*. Where the agency's decision is supported by substantial evidence, it automatically follows that the decision cannot be classified as arbitrary and capricious. *Wright v. Arkansas State Plant Board*, 311 Ark. 125, 842 S.W.2d 42 (1992).

Teston argues first that there was no substantial evidence that he was subject to the Arkansas Chiropractic Practices Act, *see* Ark. Code Ann. § 17-81-101 *et seq.* (Repl. 2002), and he claims that he was exempt from the Chiropractic Act because he was performing procedures within the scope of the Arkansas Physical Therapy Act. *See* Ark. Code Ann. § 17-93-101 *et seq.* (Repl. 2002). We begin with an examination of the relevant statutes. The "exemption" Teston cites as part of the Chiropractic Act provides in pertinent part as follows:

> *Nothing herein shall be construed to prohibit or to require a license [under the Chiropractic Act] with respect to any of the following acts:*
>
> • • • •
>
> (3) *The practice of...physical therapy...or any other branch of the* healing arts as defined by the laws of this state as now or hereafter

enacted, *it not being intended by this chapter to limit, restrict, enlarge, or alter the privileges and practices of any of these professions or branches of the healing arts.*

Ark. Code Ann. § 17-81-302(3) (Repl. 2002) (emphasis added).

In addition, although the Chiropractic Act makes it "unlawful for any person other than a physician licensed to practice chiropractic . . . to perform spinal mobilizations, spinal adjustments, or spinal manipulations as those terms are defined in § 17-81-102(7)," Ark. Code Ann. § 17-81-303(d)(1) (Repl. 2002), the Act further provides that "[n]othing contained in this subsection shall be construed to limit or restrict the authority of a licensed physical therapist to practice physical therapy as defined in § 17-93-102(6)." Ark. Code Ann. § 17-81-303(d)(2) (Repl. 2002). In turn, the "practice of physical therapy" is defined, in part, in Ark. Code Ann. § 17-93-102(6) (Repl. 2002) as follows:

(B)(i) Alleviating impairments and functional limitations by designing, implementing, and modifying therapeutic interventions that include:

\* \* \* \*

(c) Manual therapy techniques, including soft tissue massage, manual traction, connective tissue massage, therapeutic massage, and *mobilization, i.e., passive movement accomplished within normal range of motion of the joint, but excluding spinal manipulation and adjustment*[.]

(Emphasis added.)

Finally, "spinal manipulation and adjustment" is defined within the Chiropractic Act as "the skillful or dexterous treatment whereby a corrective force or passive movement of the joint is made to realign vertebrae or articulations to their normal juxtaposition." Ark. Code Ann. § 17-81-102(7) (Repl. 2002).

Teston argues that there is no substantial evidence in the record that he exceeded his authority under the Physical Therapy Act. Stated another way, he contends that the evidence supported a conclusion that he was practicing physical therapy, and therefore, he could not have been engaged in the unlawful practice of chiropractic. In support of his argument, Teston points out that the Physical Therapy Board determined that his actions fell within the definition of physical therapy, and he also notes that four

physical therapists testified before the Chiropractic Board that Teston's treatments of Fryar and Hendrix constituted appropriate physical-therapy treatments.

Teston's argument appears to be based fundamentally on his contention that the witnesses testifying on his behalf offered more compelling testimony than the witnesses who offered evidence against him. As stated above, however, the credibility and the weight of the evidence is within the administrative agency's discretion, and it is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord that evidence. *Williams*, 353 Ark. at 785.

Here, Katherine Fryar, the complaining witness, testified that she began to see Teston for physical therapy after sustaining injuries from a car accident. She described what Teston did to her as being like a "wrestling hold," in which he would "put pressure on the spine and the joint would pop." Fryar stated that she would "cross [her] hands over [her] chest and lay down over his hand and would feel [and] hear a popping sound, feel the movement of the vertebrae." Fryar further asserted that she had been to a chiropractor before, and what Teston did to her felt like what the chiropractor had done; she said that Teston's treatment consisted of "very similar motion[s] and the results felt the same."

The Chiropractic Board also heard the testimony of investigator Dennis Hendrix, who testified that when he went to see Teston for treatment, Teston placed his fingertips on Hendrix's spine and indicated that he (Teston) could feel a "flat spot" in the thoracic area. Hendrix then testified that Teston had him lie prone on his back with his fingers laced together behind his head and his elbows pulled together; Hendrix "rose up" in this position, and then Teston pulled Hendrix's elbows even closer together and started repositioning Hendrix in a prone position. Just before reaching a flat, prone position, Teston pulled Hendrix's torso to the right, and Hendrix heard "two or three pops or snaps." Teston repeated this exercise a second time, and Hendrix heard two or three more pops or snaps. Teston later told Hendrix that what he had done was called a "joint mobilization." Hendrix stated that he, like Fryar, had been to a chiropractor before, and the procedure Teston had performed, as well as the results of the procedure, were the same as Hendrix had received from the chiropractor.

Finally, the Board heard the expert testimony of Dr. Edward Ashton, a chiropractor and physical therapist from Silver Springs, Maryland. Dr. Ashton testified that, in the practice of chiropractic,

spinal manipulations or adjustments are used in order to "move [a joint] outside of the normal range [of movement] . . . [in order to] facilitate the changes . . . to make that [joint] segment more normal." He defined an adjustment as "moving joints or spinal joints outside their normal range [of motion] . . . , which generally results in an audible release." Dr. Ashton further testified that he believed Teston manipulated Fryar's and Hendrix's joints by moving them outside of their normal range of motion, based on the "popping" sound to which both witnesses alluded.

As mentioned above, physical therapy involves the use of manual therapy techniques, including mobilizations, which are "passive movement[s] accomplished within [the] normal range of motion of the joint." § 17-93-102(6)(B)(i)(*c*). The evidence before the Chiropractic Board substantially supported its conclusion that Teston's treatment of Fryar and Hendrix involved moving their joints beyond their normal range of motion, and consequently, Teston's actions did not fall within the definition of the practice of physical therapy. Therefore, he was not entitled to the Chiropractic Act's "exemption" which he claims applies. Furthermore, the evidence supported the Chiropractic Board's conclusion that Teston performed "spinal manipulations" or "spinal adjustments," defined in Ark. Code Ann. § 17-81-103(7) as "a corrective force or passive movement . . . made to realign vertebrae or articulations to their normal juxtaposition," and both "spinal manipulation" and "adjustment" are encompassed within the definition of the "practice of chiropractic." *See* § 17-81-103(6)(A).

We note that the question is not whether the testimony would have supported a contrary finding, but whether it would support the finding that was made. Teston spends much of his argument contending that Dr. Ashton relied on the "popping" testimony received from Fryar and Hendrix to support his expert opinion that such a "popping" sound demonstrated that Teston was practicing chiropractic. However, we note that Dr. Ashton was qualified as an expert, and although Teston attempted to discredit his opinion, the apparent inconsistencies that were revealed on cross-examination (and on which Teston relies heavily on appeal) went only to the weight of Dr. Ashton's testimony. As discussed above, the credibility and the weight of the evidence is within the administrative agency's discretion, and it is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord that evidence. *Williams*, 353 Ark. at

785. Further, the Board had before it both Fryar and Hendrix's testimony to support its decision.

■ Here, we conclude that the evidence supports the finding made by the Board, namely, that Teston's treatments of Fryar and Hendrix were spinal manipulations that can only be performed by licensed chiropractors. As there was substantial evidence to support the Board's finding that Teston was practicing chiropractic, it necessarily follows that Teston was not practicing physical therapy, and therefore, he was not entitled to the "exemption" found in § 17-81-302(3).

Teston's next argument on appeal is that the Board failed to make sufficient factual findings. The Administrative Procedures Act (APA), Ark. Code Ann. § 25-15-210(b)(2) (Repl. 2002), requires that an administrative adjudication be accompanied by specific findings of fact; the act provides in relevant part as follows:

> (b)(1) In every case of adjudication, a final decision or order shall be in writing or stated in the record.
>
> (2) A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. . . .

In *Holloway v. Arkansas State Board of Architects*, 352 Ark. 427, 101 S.W.3d 805 (2003), this court cited with approval from *Nesterenko v. Arkansas Board of Chiropractic Examiners*, 76 Ark. App. 561, 69 S.W.3d 459 (2002), as follows:

> The court of appeals has described a "finding of fact" as "a simple straightforward statement of what happened. A statement of what the Board finds has happened; not a statement that a witness, or witnesses, testified thus and so. . . . [W]hen the reader is a reviewing court, the statement must contain all specific facts relevant to the contested issue or issues so that the court may determine whether the Board has resolved those issues in conformity with the law." *Nesterenko, [supra]*. The purpose of requiring such factual findings is that they benefit the court in the following way: facilitating judicial review; avoiding judicial usurpation of administrative functions; assuring more careful and administrative consideration; aiding the parties in planning for hearings and judicial review; and keeping an agency within its jurisdiction. *Gordon v. Cummings*, 262 Ark. 737, 561 S.W.2d 285 (1978).

*Holloway*, 352 Ark. at 438–39.

In *Holloway*, this court determined that the findings of the State Board of Architects "contain[ed] sufficient facts relevant to the contested issue so that this court [could] determine whether the Board [had] resolved those issues in conformity with the law." *Id.* at 439. There, the facts included statements that Holloway, an engineer, was not a licensed architect, and that Holloway had prepared drawings and specifications for a building. The building consisted mainly of office space, and the primary purpose of the building was for human occupation or habitation. The cost of the building was in excess of $100,000, and the work performed by Holloway was not incidental to the practice of engineering. *Id.* at 438. These findings "reflected the facts to which [the Board's witness] testified, and because the findings incorporated a "proper and acceptable finding of the basic or underlying facts drawn from the evidence," they were sufficient under the APA. *Id.* at 439 (quoting from *Nesterenko, supra*).

In the instant case, the Chiropractic Board's findings were as follows:

> F-1. At all times pertinent to this hearing, [Teston] has been unlicensed to practice chiropractic in the State of Arkansas.

> F-2. Between January and April 2001, [Teston] treated . . . Katherine Fryar as a physical therapist following a car accident.

> F-3. During the three-month period, [Teston's] treatments included popping [Fryar's] cervical, thoracic and lumbar regions of [the] spine. Based on [Fryar's] testimonial description of her and [Teston's] body and hand positions, pressure used, documentary evidence submitted, and testimony of the various expert witnesses, the board finds that the maneuvers described by [Teston] were spinal manipulations which can only be performed by licensed chiropractors in the State of Arkansas. . . . [T]his finding shall constitute one violation.

> F-4. Based on [Teston's] testimony that the maneuvers were common in his practice, the Board finds that [Teston] may have treated others similarly. Due to the speculative nature of the finding, it shall not count as a violation.

> F-5. On May 30, 2002, the Board's investigator, Dennis Hendrix, visited [Teston's] clinic as part of his investigation and was

treated. [Teston's] treatments included an upper body twisting maneuver that created a popping in the spine. Based on Mr. Hendrix's testimonial description of his and [Teston's] body and hand positions, pressure used, documentary evidence submitted, and testimony of the various expert witnesses, the board finds that the maneuvers described by [Teston] were spinal manipulations which can only be performed by licensed chiropractors in the State of Arkansas. This finding shall constitute one violation.

Thus, the Board's findings contain a statement that Fryar's treatment consisted of "popping [her] cervical, thoracic and lumbar regions of the spine," as well as a statement that Hendrix was treated with "an upper body twisting maneuver that created a popping in the spine." Both of these statements include sufficient details of the witnesses' testimony upon which the Board reasonably relied in reaching its decision. As in *Holloway, supra*, this court has facts from which we are able to determine whether the Board resolved the questions before it in conformity with the law. Thus, we conclude that the Board's factual findings were sufficient.

The final argument in Teston's appeal is that the Chiropractic Act's prohibition against a physical therapist performing a "manipulation" is unconstitutionally void for vagueness. He asserts that, because the Chiropractic Act defines "spinal manipulation" the same as "spinal mobilization," but the Physical Therapy Act permits a physical therapist to perform all "mobilizations," there is an unconstitutionally vague overlap, as a person of ordinary intelligence would have to guess at the statutes' meaning.

Teston's constitutional argument is not preserved for appeal. In order to preserve a constitutional argument in an appeal from an agency decision, the constitutional issue must first be raised and developed at the administrative level. This court firmly established the rules governing the raising and developing of constitutional arguments before an administrative agency in *AT&T Communications of the Southwest, Inc. v. Arkansas Public Service Commission*, 344 Ark. 188, 40 S.W.3d 273 (2001), wherein the court wrote as follows:

Our court has addressed the question of whether an administrative agency has the authority to declare a statute unconstitutional. In *Lincoln v. Arkansas Public Service Commission*, 313 Ark. 295, 854 S.W.2d 330 (1993), we held that to allow the Public Service

Commission to *declare* unconstitutional a statute that it was required to enforce would violate the separation of powers doctrine. However, this does not mean that a constitutional issue should not be *raised and developed* at the administrative level. [Emphasis in original.]

This precise question has been considered in the context of other administrative agencies, such as the Workers' Compensation Commission. In *Hamilton v. Jeffrey Stone Co.*, 6 Ark. App. 333, 641 S.W.2d 723 (1982), the court of appeals held that questions of constitutional magnitude must be addressed at the administrative agency level before such questions will be considered preserved for appeal. The [*Hamilton*] court wrote as follows:

> Until now, this court has not been asked whether constitutional questions must first be presented at the Commission level. The general rule is that the constitutionality of a statute will not be considered if raised for the first time on appeal. Citation omitted.] This rule has also been followed by appellate courts in appeals from workers' compensation commissions and other administrative agencies. [Citations omitted.] Even though the Commission may not have the authority to declare statutes unconstitutional, we believe such issues should first be raised at the Administrative Law Judge or Commission level. Constitutional questions often require an exhaustive analysis which is best accomplished by an adversary proceeding. Obviously this can be done only at the hearing level. Requiring these constitutional issues to be considered by the Commission, we can be assured that such issues will be thoroughly developed before we are asked to rule on a statute's validity.

*Hamilton*, 6 Ark. App. at 335.

*AT&T*, 344 Ark. at 196-97. The court in that case continued as follows:

> The development of facts before the Commission thus is critical[.]. . . [T]he Commission is the only forum where a full development of the facts and law can occur; without that complete development of the facts and arguments below, this court cannot fulfill its reviewing function. Raising such constitutional issues before the Commission is significant even when a statute is challenged as unconstitutional on its face, especially since the interpre-

tation given by the agency charged with its execution is highly persuasive. *See Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n,* 69 Ark. App. 323, 13 S.W.2d 197 (2000).

> . . . AT&T provided only a bare reference to what it believed were issues of constitutional magnitude in its motion for reconsideration and its application for rehearing. No attempt was made to flesh out these constitutional arguments before the Commission, either in AT&T's pleadings or by proffering testimony of witnesses. Nor did AT&T request a ruling or determination by the Commission, or suggest the Commission was wrong in not making a determination. Thus, we hold that AT&T has not sufficiently developed its constitutional arguments to preserve them for this court's review.

*Id.* at 197-98.

In the instant case, the record fails to show that Teston filed any pleadings with the Chiropractic Board during its consideration of Fryar's complaint. The only mention of "vagueness" came in Teston's attorney's closing arguments before the Board, which Teston did not abstract.[1] Teston did not address this constitutional issue before the Board, nor did he request the Board's ruling on this constitutional argument. Accordingly, the Board made no conclusions of law concerning the constitutionality of the statute; its order stated only that Teston had practiced chiropractic without a license. Although Teston raised his constitutional argument before the trial court, this court does not, on an appeal from an agency decision, review the actions of the circuit court. *See Williams v. Arkansas State Board of Phys. Therapy,* 353 Ark. 778, 120 S.W.3d 581 (2003). Further, Teston did not even specifically challenge the statute as being void for vagueness in his petition for judicial review; instead, he generically alleged that the "Board's decision was in violation of constitutional and statutory provisions." Because Teston did not raise, address, or develop the issue of the constitutionality of the Chiropractic Act in the

---

[1] The record reveals that Teston argued that "[what] you have [is] a law that's too vague and nobody can tell what they're allowed to do. You know, where is it explained in your regulations or anything how anything that Mr. Teston did falls within the definition of spinal manipulation in your law?"

proceedings before the Chiropractic Board, this court must hold that his constitutional argument is not preserved for appeal.[2]

HANNAH, C.J., concurs.

BROWN and IMBER, JJ., not participating.

JIM HANNAH, Chief Justice, concurring. I concur with the result reached by the majority, but I write to express my concern that this case was not referred to the Arkansas State Board of Physical Therapy for review of Teston's treatments administered to Fryar and Hendrix. In this case, the Chiropractic Board found that Teston practiced chiropractic without a license. In an order entered prior to the Chiropractic Board's hearing, the Physical Therapy Board concluded that Teston provided treatment within the scope of the practice of physical therapy.

Where there is a dispute between two licensing boards with regard to the same conduct, both boards are necessary parties. *See Arkansas State Med. Bd. v. Schoen,* 338 Ark. 762, 1 S.W.3d 430 (1999); *Arkansas State Med. Bd. v. Bolding,* 324 Ark. 238, 920 S.W.2d 825 (1996). Subsequent to its determination that Teston had engaged in the unauthorized practice of chiropractic, the Chiropractic Board should have referred the matter to the Physical Therapy Board for review of Teston's actions. Then, if not satisfied with the Physical Therapy Board's conclusion, the Chiropractic Board could have filed an action in circuit court naming Teston and the Physical Therapy Board as necessary parties.

In *Bolding, supra,* the Medical Board sued a dentist and a hospital where the dentist performed surgery, alleging that the dentist was engaged in the unauthorized practice of medicine. The

---

[2] We also note that several of the *amicus curiae* briefs cite Ark. Code Ann. § 17-80-114 (Supp. 2003), which provides for a method of arbitration between boards of the healing arts concerning scopes of practice; the statute provides that no board of the healing arts may take disciplinary action at the board level against a licensee of another board of the healing arts except as provided by § 17-80-114(c). However, neither Teston nor the State raises this argument. This court has repeatedly held that it will not address new points raised only by *amici curiae,* as the *amici curiae* must "take the case as [they] find[ ] it and cannot raise issues not raised by the parties or introduce new issues at the appellate level." *See Arkansas Transit Homes v. Aetna Life & Cas.,* 341 Ark. 317, 16 S.W.3d 545 (2000); *Priest v. Polk,* 322 Ark. 673, 912 S.W.2d 902 (1995); *City of Little Rock v. AT&T Communications of the Southwest, Inc.,* 316 Ark. 94, 870 S.W.2d 217 (1994); *Ferguson v. Brick,* 279 Ark. 168, 649 S.W.2d 397 (1983) *(per curiam); Mears v. Little Rock School Dist.,* 268 Ark. 30, 593 S.W.2d 42 (1980); *Equilease Corp. v. United States Fidelity & Guar. Co.,* 262 Ark. 689, 565 S.W.2d 125 (1978).

trial court granted summary judgment in favor of the dentist and the hospital on the grounds that the dentist was practicing dentistry under the authority granted to him by the Dental Board. The trial court reasoned that it could not grant the relief requested by the Medical Board without exposing the dentist to inconsistent determinations by two different state agencies. On appeal, we held that the trial court erred in granting summary judgment because the Dental Board should have been joined as a necessary party. We stated:

> It is obvious there exists a disagreement between the Medical Board and the Dental Board as to where the practice of dentistry stops and the practice of medicine commences. It is a significant question and one which should only be addressed upon a fully developed record with all the necessary parties before the court.

*Bolding*, 324 Ark. at 245, 920 S.W.2d at 829.

In *Schoen, supra*, the Medical Board sued a dentist and the Dental Board, alleging that the dentist, with the aid of the Dental Board, was engaged in the unauthorized practice of medicine by performing certain procedures, including the removal of a basal cell carcinoma from the forehead of a patient. The chancery court dismissed the action on the ground that the Medical Board had an adequate remedy at law in an administrative proceeding before the Dental Board. We reversed, stating that because the Dental Board had taken the position that the removal of the carcinoma was the practice of dentistry, it could not "posture itself as an objective and impartial tribunal." *Schoen*, 338 Ark. at 767, 1 S.W.3d at 433-34. Further, we noted:

> We are aware that any decision by the Dental Board would be subject to review in circuit court. But judicial review of an administrative appeal is limited. We conclude that under these circumstances the administrative remedy is inadequate and chancery court should retain jurisdiction pursuant to its authority under § 17-95-402(b) and (c).

*Id.*; 1 S.W.3d at 434 (citations omitted).

In *Schoen*, we concluded that it was "eminently preferable to have the legal and factual issues thrashed out in chancery court with the full participation of the Dental Board and the Medical Board." *Id.* at 768, 1 S.W.3d at 434. Likewise, in the instant case,

it would have been preferable to have the legal and factual issues thrashed out in circuit court with the full participation of the Chiropractic Board and the Physical Therapy Board. In fairness to Teston, the Physical Therapy Board should have been joined as a party to the action. Nevertheless, I agree that this case must be affirmed because Teston failed to raise the argument that the Physical Therapy Board should have been joined as a necessary party.