OLSTEN HEALTH SERVICES, INC. *v.*
ARKANSAS HEALTH SERVICES COMMISSION

CA 99-796                                     12 S.W.3d 656

Court of Appeals of Arkansas
Division IV
Opinion delivered March 15, 2000

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Debby Thetford Nye*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Warren T. Readnour*, Ass't Att'y Gen., for appellees.

ANDREE LAYTON ROAF, Judge. Appellant Olsten Health Services, Inc., is a home health-care provider. In mid-1997, the central Arkansas-based company applied for permits of approval (POAs) from the Arkansas Health Services Agency (the Agency) to operate in five other regions of the state. The Agency recommended denial of the applications, and that recommendation was later endorsed by appellee, Arkansas Health Services Commission. Following a hearing and the Commission's reaffirmance of its decision, Olsten appealed to the Pulaski County Circuit Court. The court upheld the Commission, and this appeal followed. Olsten seeks reversal of the Commission's decision on the grounds that it is not supported by substantial evidence, is arbitrary and

capricious, is affected by flawed decision-making methodology, and is generally unfair. Olsten also contends that the case should be remanded because the Commission failed to make sufficient findings of fact. We find no error and affirm.

In 1983, Olsten began providing home health-care services throughout the state of Arkansas. However, in early 1997, the Arkansas Department of Health determined that home health-care agencies would be licensed by geographic areas and that agencies outside a fifty-mile radius of those areas could not provide services without first giving local agencies the opportunity to do so. In response to that rule, Olsten filed applications for permits of approval to extend its operation to northwest Arkansas, northeast Arkansas, northern Arkansas, north-central Arkansas, and southwest Arkansas. According to its applications, it intended to provide high-tech extended-care services to Medicaid-eligible adult and pediatric beneficiaries, which it claimed existing agencies in the service areas did not or could not offer.[1]

On August 19, 1997, the Agency recommended denial of all of Olsten's applications. Its decision was based primarily upon information gleaned from similar applications filed by CareNetwork, another central Arkansas-based home health-care company. In reviewing CareNetwork's applications approximately two months prior to its decision on Olsten's applications, the Commission had found no evidence of an unmet need in the five geographic areas. Statistics showed that in fiscal years 1996 and 1997, Olsten and CareNetwork received the vast majority of Medicaid reimbursements for home health care in the five geographic

---

[1] Olsten's applications were submitted to the Agency in accordance with state law. The Agency has the responsibility of conducting an initial review of applications for permits of approval filed by home health-care companies. *See* Ark. Code Ann. § 20-8-104(d) (Repl. 1991). Following its review, the Agency submits a recommendation to the Commission. *Id.* The Commission may then either endorse or reject the Agency's recommendation. *See* Ark. Code Ann. § 20-8-103(f) (Repl. 1991). To evaluate the need for additional home health-care services in a region, the Commission uses population-based criteria. For example, a service area with 30,000 to 50,000 people can be approved for a maximum of three agencies; a service area with 75,000 to 110,000 people can be approved for a maximum of five agencies. However, an exception to these criteria allows approval of an application, notwithstanding the population-based methodology, if the applicant can prove that existing agencies are not meeting an area's needs. Further, the following general criteria are also to be considered by the Commission: 1) whether the project can be adequately staffed and operated when completed; 2) whether the proposed project is economically feasible; and 3) whether the project will foster cost containment through improved efficiency and productivity.

regions at issue. Local companies received either a small percentage of reimbursements or, in the case of the Northern Arkansas region, no reimbursements. Despite these figures, the Commission found in the CareNetwork applications that there was no evidence of unmet need in the areas because "people ... did have a Medicaid provider number and/or do have staffing to provide the services, and ... the services are available...." This finding was incorporated by the Agency in its findings on the Olsten applications. The Agency also found that the addition of other home health-care companies in the areas was not economically feasible and that it did not enhance cost containment.

The Agency's ruling on each Olsten application was subsequently endorsed by the Commission. Olsten appealed which, under the law, entitled it to a public hearing before the Commission. *See* Ark. Code Ann. § 20-8-103(h) (Repl. 1991). At the hearing, a number of witnesses testified in opposition to Olsten being granted POAs for the areas in question.

Susan Carter, owner of Home Health Professionals in Blytheville, testified that she had a POA for all of Mississippi County and her agency had the ability to provide the services that Olsten proposed to provide, including the high-tech pediatric and rehabilitation services. Sue Harmon, who is employed by Approve Home Medical Services, testified that her agency had a POA for Independence County, and it had the ability to provide the same care Olsten proposed to provide. She further testified that they currently had Medicaid patients, and there were other Medicaid providers in the area. Cathy Grissom, vice president for Home and Community Based Services at Ouachita Medical Center, testified that her agency offered high-tech extended-care services. She also testified that although her agency did not currently have a Medicaid patient, it has had Medicaid patients. Mary Blevins, an assistant administrator with Alliance Home Health in Prescott, testified that her agency offered extended-care services, including high-tech services. The primary service area for her agency is Nevada, Clark, Hempstead, and Pike Counties, and the agency is licensed to provide care in the Camden and Magnolia areas. Finally, she testified that Alliance was a Medicaid provider. Kathy Quast, Director for Carroll Regional Medical Center, Home Care Services, testified that her agency did not currently offer extended-care services in Carroll County because they had not identified a need for that type of service. She

further testified that there were existing home health providers who were able to meet the needs of extended-care patients. Roseanna Taylor, Director of Home Care Services at St. Mary's in Rogers, testified that her agency did not offer extended-care services. She stated that her agency did not feel there was an unmet need in the area, and four other agencies were already providing extended-care services. Finally, Cindy Parker, Regional Director for Crittenden Home Care Services in West Memphis, testified that her agency had never received a Medicaid high-tech referral that it could not handle. She further testified that other agencies in the area also provided such services and a patient does have a choice between providers. Additionally, the record included more than ten letters from medical doctors and proprietors of home health-care agencies, who offered their opinions that the needs Olsten sought to address were already being met by local agencies.

In its case, Olsten submitted the sworn statements of four persons. Three of the persons had children currently receiving home health care. Two of them, Lisa Bruce from the northern Arkansas region and Melba Lawson from northeast Arkansas region, said that they had had trouble finding providers in their area that offered adequate home health care. The other, Edward Stockberger from the northwest Arkansas region, said that he knew of two or three providers in his area and that he had enough to choose from. Additionally, Cynthia Howe, a nurse employed by Olsten in the southwest Arkansas region, said she knew of two instances in which there was not a quality home health-care provider to meet the needs of particular clients.

At the hearing, Olsten presented the live testimony of Dr. Gil Buchanan, the person responsible for the availability of home health care to children in the state's Medicaid program. Despite his responsibilities, Dr. Buchanan said that he was not specifically familiar with the availability of home health care in the five regions, nor would he testify that more agencies were needed to serve those regions. Olsten also called Patricia Brown, RN, who testified that there was a problem throughout the state with a lack of adequate home health-care providers, particularly for rehabilitation services. Anita Margo, an employee of Olsten, and Cheryl Johnson, RN, testified that a need existed for high-tech ventilator and rehab services. Charles McCauley, Olsten's branch director, said that Olsten was prepared to offer services such as pediatric care, high-

tech ventilator, rehab, and other services not offered by local agencies in the five geographic areas.

Following the hearing, the Commission voted to uphold the denial of the applications. It found that Olsten had failed to prove that existing agencies were not meeting the needs in the service areas, that whatever needs that existed were small, and that the needs were already being met by existing agencies. The Commission also found that Olsen failed to prove that staffing was available[2], that their applications were economically feasible, or that cost containment would be fostered by granting the POAs. Upon appeal to the Pulaski County Circuit Court, the Commission's decision was upheld. The judge found that the decision was supported by substantial evidence and was not arbitrary or capricious.

■■ Our review is governed by the Administrative Procedure Act, Ark. Code Ann. §§ 25-15-201 to -214 (Repl. 1996 and Supp. 1999). Under the Act, we may reverse or modify an agency decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are, *inter alia*, not supported by substantial evidence of record or are arbitrary, capricious, or characterized by an abuse of discretion. Ark. Code Ann. § 25-15-212(h)(5) and (6) (Supp. 1999). Our review is not directed toward the circuit court but toward the decision of the agency. *Arkansas Dep't of Human Servs. v. Kistler*, 320 Ark. 501, 898 S.W.2d 32 (1995); *Arkansas Bd. of Registr. for Prof'l Geologists v. Ackley*, 64 Ark. App. 325, 984 S.W.2d 67 (1998). We review the entire record to determine whether there is any substantial evidence to support the agency's decision and whether it is arbitrary or capricious. *Wacaser v. Insurance Comm'r*, 321 Ark. 143, 900 S.W.2d 191 (1995).

■■ The threshold question in a case brought to court from an administrative agency is whether the agency has followed the dictates of Ark. Code Ann. § 25-15-210(b)(2) (Repl. 1996) in providing concise and explicit findings of fact and conclusions of

---

[2] We note that this finding is incorrect in that it was uncontroverted that Olsten had the ability to draw from the same manpower pool as the local agencies. However, because Olsten had the burden of proving its entitlement to a license, valid findings that Olsten failed to prove at least one of the other elements required for the issuance of a POA is enough to affirm the Commission. *Cf. Bryant v. Arkansas Pub. Serv. Comm'n*, 62 Ark. App. 154, 969 S.W.2d 203 (1998).

law, separately stated in its order. *See Gordon v. Cummings*, 262 Ark. 737, 561 S.W.2d 285 (1978). The benefits flowing from this requirement are: facilitation of judicial review, avoidance of judicial usurpation of administrative function, assurance of more careful and administrative consideration, aiding the parties in planning for hearings and judicial review, and keeping an agency within its jurisdiction. *See id.* If an agency fails to make adequate findings, the case may be remanded to it to correct any deficiencies. *See Floyd v. Arkansas State Bd. of Pharmacy*, 251 Ark. 626, 473 S.W.2d 866 (1971).

■ Olsten argues that the Commission failed to make sufficient findings of fact in this case. We disagree. First of all, we may consider the Agency's findings, which were endorsed by the Commission, along with the Commission's findings to determine the adequacy thereof. *See generally Wright v. Arkansas State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992). When we do so, it is apparent that the statistics, facts, and conclusions of law recited by the Agency and the Commission are adequate to facilitate judicial review and to serve the other considerations set out in *Gordon v. Cummings, supra.* We therefore find no error on this point.

■ We turn now to the merits of the case. The first issue is whether the Commission's findings are supported by substantial evidence. Substantial evidence has been defined as valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion and force the mind to pass beyond conjecture. *Eckels v. Arkansas Real Estate Comm'n*, 30 Ark. App. 69, 783 S.W.2d 864 (1990). To establish a lack of substantial evidence, an appellant is required to demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach the same conclusion. *City of Hector v. Arkansas Soil & Water Conserv. Comm'n*, 47 Ark. App. 177, 888 S.W.2d 312 (1994). The question is not whether the evidence would have supported a contrary finding but whether it supported the finding that was actually made. *Id.* The evidence is given its strongest probative force in favor of the administrative agency's ruling. *Arkansas Health Servs. Agency v. Desiderata, Inc.*, 331 Ark. 144, 958 S.W.2d 7 (1998).

Olsten argues that the Commission's decision was not supported by substantial evidence for two reasons. First, it claims that

the testimony of the opposing witnesses cannot be considered substantial evidence because it was self-serving. We disagree.

■ The credibility and the weight of the evidence is within the administrative agency's discretion. *Arkansas Bd. of Registr. for Prof'l Geologists v. Ackley, supra.* It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *McQuay v. Arkansas State Bd. of Architects,* 337 Ark. 339, 989 S.W.2d 499 (1999). The record reveals no reason why the Commission should not believe the opposing witnesses and their testimony that the needs of their regions were being met by existing agencies. Secondly, Olsten argues that the Commission should only have considered the opposing companies' ability to provide services as of the date of its application, which Olsten refers to as June 1, 1997, not as of the date of the hearing over one year later.

■ We hold that the Commission properly considered the state of available services as of the date of the hearing. The entire point of the hearing is to determine whether the services of an additional home health agency are needed. It is therefore entirely appropriate for the Commission to deny a request for a permit of approval to a health-care company if existing agencies are providing the necessary services at any time before the Commission renders its decision.

■ We also note that the testimony of Olsten's client-witnesses, whose statements were submitted prior to the hearing, was ambiguous at best regarding the ability of local agencies to meet their needs. Although the clients expressed their opinions that more health service agencies were needed, they did not show that their needs were not being met. One client stated that there were several agencies to choose from in his area. Further, Olsten's expert witness, Dr. Gil Buchanan, could not say that local agencies were not meeting the needs of their regions. He expressly stated that he was not testifying that more home health agencies were needed. Finally, regarding Olsten's claim that it could provide more professional services than local agencies, the evidence at trial was that Olsten and the local agencies were hiring from the same pool of local nurses for their staffs. In light of the foregoing, we hold that the Commission's findings were supported by substantial evidence.

■ The next issue is whether the Commission's action was arbitrary and capricious and whether it was, in Olsten's words, "profoundly unfair." Administrative action may be regarded as arbitrary and capricious where it is not supportable on any rational basis. *McQuay v. Arkansas State Bd. of Architects, supra.* To have an administrative action set aside on this basis, the party challenging the action must prove that it was a willful and unreasoning action, without consideration, and with disregard of the facts and circumstances of the case. *Id.*

■ For the reasons already set forth under the discussion of the substantial-evidence issue, we see no arbitrary or capricious action on the part of the Commission, nor do we determine that its action was profoundly unfair. If the Commission believed the testimony of the opposing witnesses, then there was a rational basis for its decision. Further, if an agency's action is supported by substantial evidence, then it follows automatically that the agency's decision cannot be characterized as arbitrary or capricious. *Franklin v. Arkansas Dep't of Human Servs.*, 319 Ark. 468, 892 S.W.2d 262 (1995).

■ Olsten's final argument is that the Commission employed a flawed methodology in making its decision. This argument was not presented to or ruled upon by the Agency, the Commission, or the circuit court. Therefore, we will not consider it on appeal. *See Arkansas Bd. of Examiners v. Carlson*, 334 Ark. 614, 976 S.W.2d 934 (1998).

Affirmed.

ROBBINS, C.J., and STROUD, J., agree.