Cite as 2019 Ark. App. 587

# ARKANSAS COURT OF APPEALS

DIVISION IV

No. CV–18–785

| | |
|---|---|
| TEDDY REYNOLDS | **Opinion Delivered:** December 11, 2019 |
| APPELLANT | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. 14CV-13-84] |
| V. | |
| ARKANSAS APPRAISER LICENSING AND CERTIFICATION BOARD | HONORABLE DAVID F. GUTHRIE, JUDGE |
| APPELLEE | |
| | AFFIRMED |

## BART F. VIRDEN, Judge

This is an administrative appeal arising out of the Arkansas Appraiser Licensing and Certification Board's (the Board's) order sanctioning Teddy Reynolds on the basis of his alleged failure to comply with the *Uniform Standards of Professional Appraisal Practices* (USPAP). Reynolds appealed the Board's decision to the Columbia County Circuit Court, which affirmed. Reynolds now seeks our court's review of the Board's decision, arguing generally that the Board's decision is not supported by substantial evidence, is arbitrary and capricious, and lacks sufficient findings of fact. Having fully considered the arguments on appeal, we affirm the Board's decision.

### I. *Background and Procedural History*

Teddy Reynolds is a licensed general appraiser in the state of Arkansas, and his conduct as an appraiser is governed by the USPAP. In 2009, Louisiana Land Bank engaged Reynolds to prepare an appraisal on land owned by Michael Worley because it was

contemplating extending credit to Worley. The land, known as Delta Duck Farms, consists of 702 acres in Monroe County, which Worley purchased in two tracts in 2009. Worley intended to build a luxury hunting lodge and specialty barn on the land. He also planned to use a portion of the land for agronomy and recreation.

Reynolds prepared a summary appraisal report for Louisiana Land Bank in January 2010. The appraisal included a workfile, which contained several pages of Excel documents. The appraisal was also sent to Worley who, in turn, shopped the appraisal to several other banks in an attempt to get the best loan terms. Ultimately, Louisiana Land Bank declined to offer a loan to Worley.

In May 2011, an anonymous complaint against Reynolds was filed with the Board based on his appraisal for Louisiana Land Bank. The Board, through chief investigator Diana Piechocki, investigated the complaint. In the course of Piechocki's investigation, she reviewed the appraisal and a portion of Reynolds's workfile, although she did not review the Excel documents Reynolds created and included as part of his appraisal. Piechocki found several critical deficiencies in Reynolds's appraisal, and formal charges were lodged against him. The general basis of the complaint and subsequent charges against Reynolds was that his appraisal lacked the required specificity, especially as it related to his failure to analyze his findings in narrative form.

The Board held a hearing on those charges in March 2013. At the beginning of the hearing, the Board considered whether a continuance should be granted. It was determined that in investigating the charges, Piechocki had not reviewed Reynolds's Excel documents. Reynolds's counsel requested a continuance for Piechocki to inspect them, thinking that

2

her opinion on his appraisal would be changed by the examination. Counsel for the Board suggested that the hearing continue as scheduled, allotting time for Piechocki to examine the documents during the hearing. In suggesting this, the Board's counsel mentioned that Reynolds could present the documents to the Board and that this was sufficient to overcome any prejudice because ultimately the Board would decide whether any violations had been committed. The Board voted to go forward with the hearing.

Piechocki and Reynolds testified. Often, the hearing focused on how much narrative must be included in an appraisal. Piechocki testified regarding the deficiencies she found initially in Reynolds's appraisal. She then reviewed the Excel documents and testified that they did not change her opinion. Reynolds also testified in his defense. However, during his testimony, he admitted that his appraisal was lacking in narrative and should have been more developed. He further conceded that he would do things differently if given the opportunity. At the conclusion of the hearing, the Board voted to sanction Reynolds.

In April 2013, the Board entered findings of fact, conclusions of law, and an order. The Board's findings of fact and whether they are supported by substantial evidence are the crux of this appeal. The Board found:

> F3. That [Reynolds] did not analyze the prior transfers of the subject property within the past 36 months.
>
> F4. That [Reynolds] has failed to include support or explanation in the report or workfile as to the basis for adjustments he has made in the approaches to value. [Reynolds] has not included an allowance or explanation in the Cost Approach as to the existence of any Functional or External Obsolescence. That [Reynolds] has inadequately developed the Sales Comparison Approach and Income Approach.
>
> F5. That [Reynolds] has failed to adequately develop a "Highest and Best Use" analysis for the subject.

F6. That [Reynolds] does not adequately describe the relevant characteristics of the subject property.

The Board sanctioned Reynolds and placed him on probation for twelve months. During that period, Reynolds was required to submit a log of appraisals he signed, cosigned, or participated in each month and provide true copies of any appraisals selected from the log to the Board for review. The Board also required Reynolds to participate in seventy-five hours of educational courses approved by the Board and pay a civil penalty of $1000.

Reynolds appealed the Board's order to the Columbia County Circuit Court. After engaging in a limited judicial review of the Board's decision, the circuit court affirmed the decision of the Board in a judgment entered in June 2018. Reynolds filed a timely notice of appeal from the judgment.

On appeal, Reynolds outlines several arguments in support of reversal. He contends that the decision is not supported by substantial evidence and is arbitrary and capricious and characterized by an abuse of discretion; the decision does not contain sufficient, proper findings of fact as required by Arkansas Code Annotated section 25-15-210(b)(2) (Repl. 2014); and the Board's reliance on Piechocki's opinions renders its decision unsupported by substantial evidence.

## II. *Standard of Review*

Review of administrative-agency decisions, by both the circuit court and appellate courts, is limited to whether there is substantial evidence to support the agency's findings. *Ark. Dep't of Corr. v. Bailey*, 368 Ark. 518, 247 S.W.3d 851 (2007). Our review is directed not to the decision of the circuit court but rather to the decision of the administrative

4

agency. *Id.* When undertaking a review of administrative action, we recognize that administrative agencies, due to their specialization, experience, and greater flexibility of procedure, are better equipped than courts to analyze legal issues dealing with their agencies. *Dukes v. Norris*, 369 Ark. 511, 256 S.W.3d 483 (2007). Thus, an administrative agency's interpretation of its own regulation will not be overturned unless it is clearly wrong. *Id.*

### III. *Whether the Findings of Fact Are Sufficient*

Although it is not the first argument for reversal made by Reynolds, we begin our analysis by considering whether the Board's findings of fact were sufficient because this is a threshold question. *See Nesterenko v. Ark. Bd. of Chiropractic Exam'rs*, 76 Ark. App. 561, 69 S.W.3d 459 (2002). Arkansas Code Annotated section 25-15-210 requires that "[i]n every case of adjudication, a final decision or order shall be in writing or stated in the record." Ark. Code Ann. § 25-15-210(b)(1). Additionally, "[a] final decision shall include findings of fact and conclusions of law, separately stated." Ark. Code Ann. § 25-15-210(b)(2).

Our courts have expounded on what constitutes a finding of fact that complies with this statutory section. A finding of fact is a "simple straightforward statement of what happened. A statement of what the Board finds has happened; not a statement that a witness, or witnesses, testified thus and so. . . . [W]hen the reader is a reviewing court the statement must contain all specific facts relevant to the contested issue or issues so that the court may determine whether the Board has resolved those issues in conformity with the law. *Holloway v. Ark. State Bd. of Architects*, 352 Ark. 427, 438, 101 S.W.3d 805, 813 (citing *Nesterenko*, 76 Ark. App. at 566, 69 S.W.3d at 461).

Reynolds challenges the Board's findings by emphasizing what he considers to be their vagueness. He discusses Findings F3, F4, F5, and F6, which provide that he "did not analyze" prior property transfers; "*inadequately* developed the Sales Comparison Approach and Income Approach"; "failed to *adequately* develop a 'Highest and Best Use' analysis"; and "does not *adequately* describe . . . the property." (Emphasis added.) His objection is that these findings do not specifically explain his deficiencies and offer no guidance on how one adequately complies with the Board's rules. He argues that this lack of explanation results in a failure to comply with Arkansas Code Annotated section 25-15-210's requirements.

We disagree. Although the findings do not explain precisely how Reynolds could have remedied the deficiencies in his appraisal, the law does not require this level of specificity. Instead, the germane question is whether the findings contain sufficient facts relevant to the contested issue so that our court can determine whether the Board has resolved those issues in conformity with the law. *Holloway*, *supra*. Here, the findings explain the portion of Reynolds's appraisal that it deemed deficient, and by reviewing those findings, our court can determine whether the Board has conformed with the law. Accordingly, we affirm on this point.

IV. *Whether the Board's Decision Is Supported by Substantial Evidence*

Now we direct our attention to whether the agency's decision was supported by substantial evidence. Under the Administrative Procedure Act, a court may reverse or modify an agency decision if it prejudices the rights of an appellant because the administrative findings, inferences, or decisions are not supported by substantial evidence.

*Olsten Health Servs., Inc. v. Ark. Health Servs. Comm'n*, 69 Ark. App. 313, 12 S.W.3d 656 (2000); Ark. Code Ann. § 25-15-202(h)(5) (Supp. 2017).

Substantial evidence is valid, legal, and persuasive evidence that a reasonable mind might accept to support a conclusion and force the mind to pass beyond speculation and conjecture. *Williams v. Ark. State Bd. of Physical Therapy*, 353 Ark. 778, 120 S.W.3d 581 (2003). An appellant has the burden of proving that there is an absence of substantial evidence. *McQuay v. Ark. State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999). In order to establish such absence, the appellant must demonstrate that "the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusions." *Williams*, 353 Ark. at 783, 120 S.W.3d at 585.

We begin our analysis by considering whether Piechocki's testimony was so flawed that it necessarily means that the Board's decision was not based on substantial evidence. Reynolds criticizes Piechocki's testimony because she developed and gave her opinions on his work product before reviewing the Excel documents that were part of his appraisal. He describes her opinions as "fatally flawed" and "completely unreliable."

We acknowledge that Piechocki provided an opinion on Reynolds's appraisal before she had reviewed the Excel documents. Nevertheless, a recess was taken at the administrative hearing so that Piechocki could examine those documents, and after the recess, Piechocki testified that they did not affect her opinion. Moreover, it is the Board's charge—not Piechocki's—to decide whether Reynolds's appraisal conformed with the USPAP standards. Both Piechocki and Reynolds offered evidence on this. Piechocki testified that she had conducted an investigation on behalf of the Board and found Reynolds's appraisal to be

deficient. Reynolds also testified about his appraisal and explained how it complied with the Board's requirements. The Board was free to accept or reject both Piechocki's and Reynolds's testimony as it is the prerogative of the Board "to believe or disbelieve any witness and to decide what weight to accord the evidence." *Olsten Health Servs., Inc.*, 69 Ark. App. at 321, 12 S.W.3d at 661. Accordingly, we hold that the fact that Piechocki did not review the Excel documents until the hearing did not, by itself, render the Board's decision without substantial evidence to support it.

With the previous conclusion reached, we direct our attention to the primary question presented in this appeal, which is whether substantial evidence supported the Board's decision to sanction Reynolds as a result of his deficient appraisal. Our analysis hinges on whether Reynolds has demonstrated that "the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusions." *Williams*, 353 Ark. at 783, 120 S.W.3d at 585.

The overarching deficiency found by the board regarding Reynolds's appraisal was that it lacked sufficient narrative analysis. Reynolds conceded at the administrative hearing that his appraisal was lacking in narrative and should have been more developed. Moreover, a thorough review of the Board's findings indicates that its decision was supported by substantial evidence. As we consider each of the Board's specific findings, we are reminded that administrative agencies, due to their specialization, experience, and greater flexibility of procedure, are better equipped than courts to analyze legal issues dealing with their agencies. *Dukes*, 369 Ark. 511, 256 S.W.3d 483.

8

In Finding 3, the Board found that Reynolds "did not analyze the prior transfers of the property in the past 36 months." The Board, in its conclusions of law, determined that this was a violation of USPAP Standards Rules 1-5 and 2-2(b)(viii), which require an appraiser to "analyze all sales of the subject property that occurred within the last three years." Piechocki testified that the analysis required by the rules would include whether these were arm's-length transactions, whether the properties had been involved in foreclosures, and whether the property transfers were among members of the same family. In his appraisal, Reynolds merely listed the sale price of the two tracts of land owned by Worley.

In Finding 4, the Board found that Reynolds "failed to include support or explanation in the report or workfile as to the basis for adjustments he has made in the approaches to value. [Reynolds] has not included an allowance or explanation in the Cost Approach as to the existence of any Functional or External Obsolescence. [Reynolds] has inadequately developed the Sales Comparison Approach and Income Approach." It concluded that this was a violation for USPAP Standards Rules 1-6 and 2-2(b)(viii).

Rule 1-6 requires an appraiser to "reconcile the quality and quantity of data available and analyzed within the approaches used and reconcile the applicability and relevance of the approaches, methods, and techniques used to arrive at the value conclusion." Rule 2-2(b)(viii) requires that "the content of a Summary Appraisal Report must be consistent with the intended use of the appraisal and, at a minimum: summarize the information analyzed, the appraisal methods and techniques employed, and the reasoning that supports the

9

analyses, opinions, and conclusions; exclusion of the sales comparison approach, cost approach, or income approaches must be explained."

Piechocki criticized Reynolds's lack of support for how he arrived at the price per foot. Additionally, she mentioned that Reynolds did not explain how he chose his comparable, explain how his numbers were derived, or offer support for those numbers. Furthermore, Piechocki disapproved of Reynolds's lack of allowance or explanation in cost approach as to the existence of any functional or external obsolescence. Finally, she testified that Reynolds should have reconciled the three value approaches more fully.

In Finding 5, the Board found that Reynolds "failed to adequately develop a 'Highest and Best Use' analysis," which it concluded was a violation of USPAP Standards Rule 1–3(b). This rule requires an appraiser to develop the highest and best use of real estate by analyzing the relevant legal, physical, and economic factors to the extent necessary to support the appraiser's highest and best-use conclusions. In explaining highest and best use, the USPAP provides that "an appraiser must analyze the relevant legal, physical, and economic factors to the extent necessary to support the appraiser's highest and best use conclusion(s)."

Reynolds concluded that the highest and best use of the property based solely on the land was "combined agronomy and duck hunting recreation." Reynolds concluded that the highest and best use of the improved land was "agricultural production in conjunction with recreational use." Piechocki was critical of Reynolds's lack of support for his conclusions.

In Finding 6, the Board found that Reynolds did not "adequately describe the relevant characteristics" of the property and concluded that this was a violation of USPAP

Standards Rule 1-2(e)(i). This rule requires an appraiser to identify the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal, including its location and physical, legal, and economic attributes.

Reynolds's appraisal includes a description of the property, but Piechocki criticized this portion of Reynolds's appraisal for lack of detail. She noted that the property was valued as completed, and so it was important to know what would be constructed. To that end, she explained that Reynolds should have described the finishes that the property would have, i.e. average-quality materials or high-quality materials; commercial grade-kitchen or home kitchen; and a description of the central heat and air systems.

Having reviewed the Board's findings and the evidence from the administrative hearing, we cannot say that Reynolds has demonstrated that the Board's decision was not supported by substantial evidence. The standard to overturn an administrative agency's decision is extremely high. Our court must defer to the specialized knowledge of an administrative agency. *Dukes*, *supra*. Here, there is evidence from the hearing that supports each of the Board's findings and conclusions.

In reaching this decision, we have considered Reynolds's argument that his intended user understood his appraisal; thus, he complied with the requirements of the USPAP. He makes this scope-of-use argument because the USPAP preamble provides that "it is essential that appraisers develop and communicate their analyses, opinions and conclusions to intended users of their services in a manner that is meaningful and not misleading." The USPAP further provides that the scope of work is acceptable when it meets or exceeds the expectations of the parties who are regularly intended users for similar assignments.

11

Reynolds argued that the intended user, Louisiana Land Bank, is a sophisticated lender that understood his analyses, opinions, and conclusions without the need for additional narrative analysis, and he seeks reversal of the Board's decision on this basis. We are not persuaded by his argument. We acknowledge that there was no representative from Louisiana Land Bank at the hearing, so the Board was left to determine whether the appraisal met Louisiana Land Bank's needs. Moreover, the Board was free to decide the weight to give to Reynolds's testimony regarding Louisiana Land Bank's level of understanding. *Olsten Health Servs., Inc.*, 69 Ark. App. 313, 12 S.W.3d 656. We cannot substitute our judgment for that of the Board. Accordingly, we affirm on this point.

V. *Whether the Board's Decision Is Arbitrary and Capricious*

Next, we consider whether the Board's decision was arbitrary and capricious and whether our court should reverse the Board's decision on this basis. Ark. Code Ann. § 25-15-212(h)(6). An administrative action may be regarded as arbitrary and capricious when it is not supportable on any rational basis. *Olsten Health Servs., Inc.*, 69 Ark. App. 313, 12 S.W.3d 656. Our court has held that if an agency's action is supported by substantial evidence, then it follows automatically that the decision cannot be characterized as arbitrary and capricious. *Id.* Because we have concluded that the Board's decision was supported by substantial evidence, it rationally follows that the decision was not arbitrary and capricious. We affirm on this point.

VI. *Whether the Board's Decision Is Affected by Errors of Law*

Finally, we address briefly whether the Board's decision is affected by an error of law since this is a basis by which our court may overturn an administrative agency's decision.

12

*See* Ark. Code Ann. § 25-15-212(h)(4). Although Reynolds enumerates this argument as grounds for reversal in the body of his brief, he fails to develop an argument in support of reversal on this basis. His failure to develop this point legally or factually mandates that we summarily affirm on this point. *See Orintas v. Point Lookout Prop. Owners Ass'n Bd. of Dirs.*, 2015 Ark. App. 648, 476 S.W.3d 174.

Affirmed.

GLADWIN and VAUGHT, JJ., agree.

*Crane & Phillips, P.A.*, by: *Ryan Phillips*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Juliane Chavis*, Ass't Att'y Gen., for appellee.